812 A.2d 1164

In re Jules MELOGRANE, Former District
Justice Magisterial District 05–2–17,

Appeal of Jules Melograne.

Supreme Court of Pennsylvania.

Argued Sept. 10, 2002.

Decided Dec. 18, 2002.

Thomas R. Ceraso, Greensburg, for appellant, Jules Melograne.

Joseph A. Massa, Warren, for appellee, Judicial Conduct Bd.

Before: ZAPPALA, and CAPPY, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Justice CAPPY.

Jules Melograne ("Appellant"), a former district justice, has filed a direct appeal from the order of the Court of Judicial Discipline imposing sanctions on him. For the following reasons, we affirm in part and vacate in part the order of the Court of Judicial Discipline.

Appellant began serving as the district justice for Magisterial District 05–2–17 in 1970. He continuously served in this capacity until August 16, 1993, when he was placed on inactive status, with pay, pending disposition of federal criminal charges.

On January 22, 1996, Appellant was found guilty in federal court of conspiracy to commit mail fraud and conspiracy to violate civil rights. That same day, he resigned his judicial office. Subsequently, the United States Court of Appeals for the Third Circuit affirmed Appellant's conviction for conspiracy to violate civil rights, but reversed his conviction for conspiracy to commit mail fraud.

On August 10, 1999, the Judicial Conduct Board filed a complaint against Appellant. The parties agreed to a Stipulation of Fact in Lieu of Trial per C.J.D.R.P. 502(D)(1); the Court of Judicial Discipline then issued an opinion and order in which it concluded that Appellant's misconduct subjected him to discipline pursuant to Article V, § 18(d)(1) of the Pennsylvania Constitution. After holding a sanction hearing in which the parties argued about what the appropriate discipline should be, the Court of Judicial Discipline ordered that Appellant be removed from office, declared that he was ineligi-

ble to hold judicial office in the future, and disbarred him from the Bar of this Commonwealth.

Appellant then filed an appeal with this court.[1] For the reasons that follow, we affirm in part and vacate in part.

Our review of a determination of the Court of Judicial Discipline is channeled by Article V, § 18(c)(2) of the Pennsylvania Constitution. That provision states that we are to "review the record of the proceedings of the Court of Judicial Discipline as follows on the law, the scope of review is plenary; on the facts, the scope of review is clearly erroneous; and as to sanctions, the scope of review is whether the sanctions imposed were lawful." Pa. Const. art. V, § 18(c)(2). It is with this standard in mind that we commence our analysis of Appellant's claims.

Appellant first claims that the Court of Judicial Discipline could not discipline him because he was no longer a judicial officer at the time the disciplinary proceedings commenced. Appellant acknowledges that he did not pursue this issue below, and thus technically it is waived. Yet, he contends that the issue is saved from waiver because it raises a claim of subject matter jurisdiction, a claim which by its nature is nonwaivable.

Appellant is correct in stating that issues of subject matter jurisdiction cannot be waived. *See Blackwell v. Commonwealth*, 523 Pa. 347, 567 A.2d 630, 636 (1989). Yet, this proposition will aid Appellant only if his claim does indeed raise an issue of subject matter jurisdiction. We have noted that some litigants, while believing they are raising a claim of subject matter jurisdiction, are actually posing a challenge to the tribunal's authority, or power, to act. *See Riedel v. Human Relations Comm'n of Reading*, 559 Pa. 34, 739 A.2d 121, 124 (1999). This confusion between the meaning of the terms "jurisdiction" and "power" is not surprising. While the terms are not synonymous, they are often used interchange-

---

1. This matter is directly appealable to this court by virtue of Article V, § 18(c)(1) and 42 Pa.C.S. § 725(2).

ably by judges and litigants alike. *Id.* In *Riedel,* we teased out the distinctions between these terms, explicating that

> [j]urisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result.

*Id.* Claims relating to a tribunal's power are, unlike claims of subject matter jurisdiction, waivable. *Id.* at 125. Thus, if Appellant's claim is in actuality a challenge to the Court of Judicial Discipline's power, it has been waived as he failed to preserve it below.

■ With this standard in mind, we may now analyze Appellant's claim more acutely. Our analysis of this issue is aided by our recent decision in *Office of Disciplinary Counsel v. Jepsen,* 567 Pa. 459, 787 A.2d 420 (2002). In that matter, the question was whether this court or the Court of Judicial Discipline was the proper tribunal to disbar Jepsen, a district justice, from the practice of law. Jepsen argued that we did not have jurisdiction to disbar her, but rather the Court of Judicial Discipline had exclusive jurisdiction to sanction judicial officers. We rejected the Jepsen's characterization of her claim. We found that although this issue was "phrased in terms of jurisdiction, the real issue is whether our Court had the authority to impose the sanction of disbarment under the circumstances of this case." *Id.* at 422 (citing *Riedel*).

■ We find that as in *Jepsen,* the question here relates to the authority of the tribunal, rather than its jurisdiction. It is beyond cavil that the Court of Judicial Discipline has jurisdiction over the general subject matter presented here, namely, determining whether an individual engaged in judicial misconduct. In fact, that is the tribunal's constitutional *raison d'etre.* The question Appellant raises—whether that body may discipline a judicial officer following his resignation from office—

challenges the tribunal's power. Unfortunately, Appellant failed to preserve this issue and thus it is waived.[2]

Appellant next contends that the Court of Judicial Discipline improperly ordered that he be removed from office and banned from holding judicial office in the future. He suggests that the facts of this case render each of these sanctions meaningless. He reasons that he cannot be removed from office as he has already removed himself. Furthermore, as Article 2, § 7 of the Pennsylvania Constitution forbids him from holding office following his conviction for an "infamous crime", he is effectively barred from running for office by virtue of his felony conviction. Thus, Appellant deduces, if his actions effectively impose self-punishment, there is nothing left for the Court of Judicial Discipline to accomplish via sanctions.[3]

Appellant's argument presupposes that the only purpose of the Court of Judicial Discipline is to punish the miscreant judicial officer. Appellant misapprehends the role of the Court of Judicial Discipline. The Court of Judicial Discipline exists not only to chasten the misbehaving judge;

2. Even assuming *arguendo* that this issue was not waived, it would still not entitle Appellant to relief. Appellant's definition of the Court of Judicial Discipline's authority is an overly restrictive one, not consonant with the role of that tribunal. The Court of Judicial Discipline exists to police the conduct of the judiciary and assure the public of the integrity of this branch of government. Were we to adopt Appellant's view of that court's power, the Court of Judicial Discipline would not be able to hear a complaint brought against a judicial officer who left office due to voluntary retirement, superannuation, or even impeachment; such an overly restrictive definition of that court's authority would be in opposition to, rather than consistent with, the Court of Judicial Discipline's role. Thus, we would reject Appellant's argument and hold that the Court of Judicial Discipline has the power to sanction misbehaving judicial officers, regardless of whether they are in office during the pendency of disciplinary proceedings.

3. Appellant incorrectly phrases this issue in terms of mootness. We have stated that the "concept of mootness focuses on a change that has occurred during the length of the legal proceedings." *In re Cain*, 527 Pa. 260, 590 A.2d 291, 292 (1991). Where, as here, the facts have not changed since the inception of the legal proceedings at issue, the party's challenge is not properly characterized as one of mootness, but rather as a challenge to the authority of the tribunal. *Id.*

rather, it serves an equally—if not more—important function as protector of the integrity of the judiciary and the public's confidence in that branch of government. In disciplining a judicial officer for his misconduct, that tribunal not only punishes the wrongdoer, but also repairs the damaged public trust and provides guidance to other members of the judiciary regarding their conduct. Appellant's conviction and resignation do not accomplish these goals. Therefore, we cannot equate the voluntary relinquishment of office and the presumption that Appellant's felony conviction would bar him from running for public office with the discipline imposed by the Court of Judicial Discipline. One simply is not a substitute for the other. We thus hold that Appellant's resignation from judicial office and conviction of a felony crime did not divest the Court of Judicial Discipline of its authority to impose sanctions on Appellant.

Finally, Appellant contends that the Court of Judicial Discipline could not disbar him. He raises two arguments in support of his position. First, he argues that the Court of Judicial Discipline could not impose such a sanction because "there was no factual basis before the Court of Judicial Discipline relating to [Appellant's] status as an attorney." Appellant's Brief at 16.

Contrary to Appellant's contention, there was such evidence before the Court of Judicial Discipline, and it came in the form of an admission from Appellant himself. At the outset of the sanction hearing, a question was posed as to whether Appellant was an attorney in good standing with the Bar of Pennsylvania. Sanction Hearing, 9/27/2000, N.T. at 4. During the course of the hearing, Appellant admitted that he was an attorney and that his license to practice law was still active at that point. *Id.* at 8–9. Thus, we reject Appellant's argument that there was no evidence before the Court of Judicial Discipline regarding his status as an attorney.

In the alternative, Appellant argues that the Court of Judicial Discipline had no authority to disbar him. He contends that this court has exclusive jurisdiction over disciplin-

ary proceedings against attorneys, and there is no basis for the Court of Judicial Discipline to discipline attorneys.

We recently addressed the question of whether this court has the authority to disbar a judicial officer. *See Jepsen, supra.* The parties in *Jepsen* offered us polarized views on the proper resolution of this issue. The Office of Disciplinary Counsel argued that only this court had the power to disbar an attorney, regardless of whether the attorney also happened to be a judicial officer. Jepsen, on the other hand, contended that any discipline of a judicial officer—including disbarment from the practice of law—must be meted out by the Court of Judicial Discipline and that no other tribunal had the authority to sanction a judicial officer. In resolving the issue before the court, we rejected both of these views, and stated that both the Court of Judicial Discipline and this court concurrently held the power to discipline a judicial officer. *Jepsen,* 787 A.2d at 423–24.

At first blush, it would appear that *Jepsen* conclusively resolves the issue before us, and would dictate that the Court of Judicial Discipline has the power to disbar an attorney. More careful analysis, however, reveals that this is not the case. While there is language in the *Jepsen* opinion that intimates that the Court of Judicial Discipline would have the power to disbar a judicial officer, that was not the issue presented to this court. The sole issue in *Jepsen* was whether *this* court had the authority to disbar a judicial officer. Thus, any language in *Jepsen* regarding the power of the Court of Judicial Discipline was *obiter dicta;* the decision has no precedential value as to the issue of whether the Court of Judicial Discipline has the power to disbar a jurist.

While *Jepsen* does not squarely address the issue with which we now grapple, it does provide guidance as to its resolution. Of particular importance is the *Jepsen* court's conclusion that when the Court of Judicial Discipline was created via the 1993 amendment to Article V, § 18, we were not divested of "our inherent and exclusive power to supervise the practice of law pursuant to Article V, section 10(c) of the Pennsylvania Constitution. . . ." *Jepsen,* 787 A.2d at 425. We

have recognized that this power, being exclusive, is not one that is subject to being shared with other entities. We have emphasized that "[n]o other component of our state government may ... admit to practice or discipline an attorney. These prerogatives are within this Court's exclusive jurisdiction." *Maunus v. Com., State Ethics Comm'n,* 518 Pa. 592, 544 A.2d 1324, 1326 (1988). *See also P.J.S. v. Pennsylvania State Ethics Comm'n,* 555 Pa. 149, 723 A.2d 174, 178 (1999) (no governmental entity other than this court may regulate and discipline the professional class of attorneys). In short, our "inherent and exclusive power" is not subject to dilution via sharing among other governmental entities, and is not subject to encroachment in the area of attorney discipline.

As this court has the *exclusive* power to discipline attorneys, the Court of Judicial Discipline lacked the authority to disbar Appellant. Such a sanction may be imposed only by this court. Thus, we vacate that portion of the Court of Judicial Discipline's order which disbarred Appellant from the practice of law and refer Appellant to the Disciplinary Board of the Supreme Court of Pennsylvania.

For the foregoing reasons, the order of the Court of Judicial Discipline is affirmed in part and vacated in part.

Justice CASTILLE did not participate in the consideration or decision of this matter.

Chief Justice ZAPPALA files a concurring opinion.

Justice SAYLOR files a concurring and dissenting opinion in which Justice NIGRO joins.

Chief Justice ZAPPALA, concurring.

I join the majority opinion. As the author of *Office of Disciplinary Counsel v. Jepsen,* 567 Pa. 459, 787 A.2d 420 (2002), I write separately only to further differentiate that case from the instant matter. The majority opinion aptly notes that *Jepsen* is distinguishable because the issue there was whether our Court has the authority to disbar a judicial officer, and not whether the Court of Judicial Discipline

possessed such power. Another fundamental distinction, however, exists. The Judicial Conduct Board sought Jepsen's removal from office pursuant to a constitutional mandate applicable to disbarred members of the bar, rather than pursuant to any inherent authority possessed by that constitutionally created entity. Thus, *Jepsen* is not controlling here, where the disbarment was imposed by the Court of Judicial Discipline for judicial misconduct.

To illustrate this point, the procedural posture of the two cases must be examined. In this case, the Judicial Conduct Board filed a complaint against the judicial officer. The Court of Judicial Discipline proceeded to examine the misconduct engaged in by the judicial officer and concluded that the appropriate sanction included disbarment. That did not occur in *Jepsen*. The Judicial Conduct Board did not file a complaint against Jepsen. Instead, the Judicial Conduct Board filed in our Court an application to implement automatic forfeiture of the judicial office pursuant to Article V, Section 18(d)(3) of the Pennsylvania Constitution, which states

A justice of the peace convicted of misbehavior in office by a court, *disbarred as a member of the bar of the Supreme Court* or removed under this section shall forfeit automatically his judicial office and thereafter be ineligible for judicial office.

Pa. Const. Art V, § 18(d)(3) (emphasis added).

It is evident that the Judicial Conduct Board in *Jepsen* did not examine the alleged misconduct of the judicial officer. It was proceeding *solely* on the ground that she had been disbarred on consent by this Court and therefore was required to automatically forfeit her judicial office. Thus, the factual paradigm did not include the present scenario where the Court of Judicial Discipline examined misconduct of the judicial officer pursuant to its constitutionally conferred authority and determined that the judicial officer should be disbarred. Under these circumstances, *Jepsen* can not be interpreted as authorizing the Court of Judicial Discipline to remove a judicial officer's license to practice. As the majority opinion recognizes, that authority is exclusively vested in this Court.

Justice SAYLOR, concurring and dissenting.

A pivotal premise of the majority's analysis in this case is its assertion that "[i]t is beyond cavil that the Court of Judicial Discipline has jurisdiction over the general subject matter presented here, namely, determining whether an individual engaged in judicial misconduct." Majority Opinion at 1167. Assuming such a foundation, the majority's conclusions flow readily. But the constitutional provisions enabling the Court of Judicial Discipline address the lodging of charges, not against individuals generally, but against "a justice, judge or justice of the peace." PA. CONST. ART. V, § 18(a)(9), (b)(5).[1] Accordingly, jurisdiction is not facially implicated with respect to persons, such as Appellant, who are former judicial officers when proceedings are commenced.[2]

By contrast, in *Office of Disciplinary Counsel v. Jepsen*, 567 Pa. 459, 787 A.2d 420 (2002), the sole issue was whether this Court retained the ability to direct a particular result, disbarment on consent with respect to an attorney who was also a sitting district justice, where the Constitution also conferred jurisdiction and disciplinary authority upon the Court of Judicial Discipline. Significantly, there was no question in *Jepsen* that this Court would have possessed disciplinary jurisdiction and authority had the attorney not also been a judicial officer. The salient issue was whether the Constitutional provisions

---

**1.** Although I recognize that jurisdictional boundaries may be drawn with reference to the underlying conduct at issue, *see, e.g., Riedel v. Human Relations Comm'n of Reading*, 559 Pa. 34, 40, 739 A.2d 121, 124 (1999), the plain text of Article V, Section 18, clarifies that the class of controversies brought into view by that provision is defined, as well, by the condition that the accused be a justice, judge, or justice of the peace.

**2.** I would contrast a situation in which a formal complaint has been filed prior to resignation or removal, in which case jurisdiction can reasonably be viewed as having attached. *See, e.g., In re Larsen*, 717 A.2d 39, 43 (Pa.Ct.Jud.Disc.1998), *vacated in part*, 812 A.2d 640 (Pa. Spec.Trib.2002); *cf. Judicial Inquiry and Review Bd. v. Snyder*, 514 Pa. 142, 151, 523 A.2d 294, 299 (1987) (concluding that, once disciplinary jurisdiction attaches in this Court, the matter is not rendered moot by the judge's subsequent failed quest for retention); *In re Glancey*, 518 Pa. 276, 282–83, 542 A.2d 1350, 1353–54 (1988) (same as to a judge who resigns during the matter's pendency).

enabling the Court of Judicial Discipline divested this Court of disbarment authority. *See id.* at 462, 787 A.2d at 422.

There is no similar question of overlapping jurisdiction and potential divestiture presented here. Rather, this case concerns the scope of the jurisdiction conferred upon the Court of Judicial Discipline in the first instance. Despite the facial import of Article V, Section 18, the majority determines that jurisdiction over former judicial officers is necessary to effectuate the policy aims of Article V, Section 18. While the majority's articulation of policy is sound, I cannot agree that it requires the departure sanctioned. Rather, in my view, it would be preferable to respect the express means of effectuating policy that have been selected by the General Assembly and approved by the voting public, including the discernable, incorporated limitations. Accordingly, as Appellant had resigned from his judicial office prior to the initiation of charges against him in the Court of Judicial Discipline, I would hold that jurisdiction was not present.

I agree with the majority, however, that the Court of Judicial Discipline lacks disbarment authority, even where jurisdiction is present. In addition to the reasons presented by the majority, I note that Section 18(b)(5)'s catch-all phrase, "or other discipline as authorized by this section," is qualified under the doctrine of *ejusdem generis* by the preceding examples, all of which are directed to a judicial officer's function as such, and not his or her status as an attorney.

Justice NIGRO joins this concurring and dissenting opinion.