PER CURIAM.

**ORDER**

---

1. The Court recognizes that Respondent does not currently hold judicial office. He resigned his judicial office on March 5, 2005, a little less than a month after the Judicial Conduct Board filed its Complaint in this Court. See Finding of Fact No. 3 of this Court's opinion, *In re Zupsic*, No. 1 JD 05, 893 A.2d 875, 2005 WL 3869657 (Pa.Ct.Jud. Disc. filed December 29, 2005).

It has been contended in other cases that the jurisdiction of the Supreme Court to discipline a judge ends when the judge's judicial service ends. *See, Matter of Glancey*, 518 Pa. 276, 542 A.2d 1350 (1988); *Judicial Inquiry and Review Board v. Snyder*, 514 Pa. 142, 523 A.2d 294 (1987). The Supreme Court rejected this argument in both cases for the reason that "once instituted, our jurisdiction over disciplinary proceedings is thus only at an end when we issue a final order." These

MUSMANNO, J., did not participate in the consideration or disposition of this case.

**In re Joseph ZUPSIC, Former Magisterial District Judge In and For Magisterial District 36–3–03 Beaver County.**

**No. 1 JD 05.**

Court of Judicial Discipline of Pennsylvania.

March 13, 2006.

**ORDER**

PER CURIAM.

AND NOW, this 13th day of March, 2006, the Findings of Fact and Conclusions of Law set forth in this Court's Opinion dated December 29, 2005 having become final pursuant to C.J.D.R.P. No. 503, and after hearing held by the full Court on February 27, 2006 on the issue of sanctions, IT IS HEREBY ORDERED that Respondent, Joseph Zupsic, is removed from office and shall be ineligible to hold judicial office in the future.[1]

---

holdings of the Supreme Court were followed by this Court in *In re Larsen*, 717 A.2d 39, 43 (Pa.Ct.Jud.Disc.1998) and *In re Cicchetti*, 697 A.2d 297, 301, n. 1 (Pa.Ct.Jud.Disc.1997) and likewise control here.

We mention that in *Glancey* and *Snyder*, as well as in *Larsen* and *Cicchetti*, although sanctions in those cases were *imposed* after the judicial officer's tenure in office had ended, the disciplinary proceedings in those cases were *commenced* at a time when those judicial officers still held their judicial offices; whereas in some cases the Respondents did not even receive notification of an investigation by the Judicial Conduct Board until after their judicial service was terminated. *See, In re Sullivan*, 805 A.2d 71 (Pa.Ct.Jud.Disc. 2002); *In re Chesna*, 659 A.2d 1091 (Pa.Ct. Jud.Disc.1995). In those cases this Court rejected the claim that this factual difference

gave the jurisdictional challenge vitality. In those cases we said:

> We agree that this case is factually distinguishable, but cannot conclude that this distinction affects the jurisdiction of this Court.

In its holding in *Snyder*, Chief Justice Nix, writing for a majority of our Supreme Court, noted that

> [T]he people have entrusted to this Court the task of finally determining whether a judge should be disciplined, and, if so, the extent of that discipline and its consequences. Those consequences are not necessarily restricted to the term for which the judge has been elected or retained when he engages in improprieties which require discipline.

*Snyder* at 152, 523 A.2d at 299.

In adopting the 1993 amendment, the people have constitutionally transferred that task to this Court. Although charges were not brought until well after Chesna left office, a conclusion that this Court lacked jurisdiction to impose an appropriate sanction would result in exactly the same type of evil sought to be avoided by the rationale of *Snyder* and its progeny, i.e., avoidance of discipline by resignation prior to charges being brought. In *Disciplinary Counsel v. Anonymous Atty.*, 528 Pa. 83, 94, 595 A.2d 42, 47 (1991), our Supreme Court held that

> [The former] JIRB's authority to investigate allegations of misconduct concerning members of the judiciary is not restricted to conduct of a judge in his official capacity. Nor is JIRB's jurisdiction limited *by the status of the judicial officer at the time the misconduct occurred or at the time the investigation into it has culminated.* (Emphasis added).

It is not of record before this Court at what point in time the former JIRB received its initial complaint in this matter and commenced an investigation ... nor is it relevant. What is relevant is that the actions alleged by the Board occurred while Chesna occupied his judicial office. Accordingly, we hold that this Court properly has jurisdiction over respondent for the acts alleged by the Judicial Conduct Board.

*In re Sullivan, supra,* at 72–73, quoting *In re Chesna, supra,* at 1092–93.

In a more recent decision, *In re Melograne*, 571 Pa. 490, 812 A.2d 1164 (2002), our Supreme Court addressed the identical jurisdictional challenge. In that case Respondent was placed on inactive status with pay on August 16, 1993 pending disposition of federal criminal charges. On January 22, 1996 he was found guilty. That same day he resigned his judicial office. On August 10, 1999 the Judicial Conduct Board filed a Complaint against him in this Court.

Melograne first raised the jurisdictional issue in the Supreme Court. The Court held that the issue had been waived. This was so, the Court held, because the issue was not jurisdictional (an issue which can never be waived) but, rather, one going to the power or authority of the Court to act. Quoting from its opinion in *Riedel v. Human Relations Commission of Reading*, 559 Pa. 34, 739 A.2d 121, 124 (1999) the Court said:

> [j]urisdiction relates solely to the competency of the particular court or administrative body to determine controversies *of the general class* to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result. (Emphasis the Court's).

*In re Melograne, supra,* at 495, 812 A.2d at 1167.

The Supreme Court then stated its holding as follows:

> We find that as in [*Office of Disciplinary Counsel v.] Jepsen*[, 567 Pa. 459, 787 A.2d 420 (2002)], the question here relates to the authority of the tribunal, rather than its jurisdiction. It is beyond cavil that the Court of Judicial Discipline has jurisdiction over the general subject matter presented here, namely, determining whether an individual engaged in judicial misconduct. In fact, that is the tribunal's constitutional *raison d'etre*. The question Appellant raises—whether that body may discipline a judicial officer following his resignation from office challenges the tribunal's power. Unfortunately, Appellant failed to preserve this issue and thus it is waived.

*Id.*

Notwithstanding its holding that the issue had been waived the Supreme Court deemed it important to add:

> Even assuming *arguendo* that this issue was not waived, it would still not entitle Appellant to relief. Appellant's definition of the Court of Judicial Discipline's authority is an overly restrictive one, not consonant with the role of that tribunal. The Court of Judicial Discipline exits to police the conduct of the judiciary and assure the public of the integrity of this branch of government. Were we to adopt Appellant's view

MUSMANNO, J., did not participate in the consideration or disposition of this case.

of that court's power, the Court of Judicial Discipline would not be able to hear a complaint brought against a judicial officer who left office due to voluntary retirement, superannuation, or even impeachment; such an overly restrictive definition of that court's authority would be in opposition to, rather than consistent with, the Court of Judicial Discipline's role. Thus, we would reject Appellant's argument and hold that the Court of Judicial Discipline has the power to sanction misbehaving judicial officers, regardless of whether they are in office during the pendency of disciplinary proceedings. *Id.* n. 2.