J-S51045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.M., | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| M.K.P., | | |
| | Appellee | No. 1497 EDA 2014 |

Appeal from the Order Entered April 25, 2014
in the Court of Common Pleas of Philadelphia County
Domestic Relations at No.: 1105994; Pacses #553112291

| | | |
|---|---|---|
| S.M., | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| M.K.P., | | |
| | Appellee | No. 1720 EDA 2014 |

Appeal from the Order Entered May 15, 2014
in the Court of Common Pleas of Philadelphia County
Domestic Relations at No.: 1105994

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 24, 2015**

    In these consolidated cases, Appellant, S.M. (Mother), appeals from

the trial court's April 25, 2014 order entering a final child support

---

[*] Retired Senior Judge assigned to the Superior Court.

determination, and its May 15, 2014 order directing her to pay the attorney's fees and court costs of Appellee, M.K.P. (Father), for her failure to comply with the court's discovery order. We affirm.

This case has a voluminous and protracted procedural history. We take the relevant factual and procedural background from the trial court's December 12, 2014 opinion and our independent review of the record.

The parties are the parents of one child, C.M., born in November 2010 (Child). Mother is a self-employed attorney with an office in Philadelphia. Father is the founder and president of Union Packaging, LLC, (Union) a paper board manufacturing company located in Yeadon, Pennsylvania.[1]

On February 14, 2011, Mother filed a complaint for child support. The trial court established Child's paternity on March 23, 2011. On May 18, 2011, after a pre-trial conference, the court entered an interim order directing Father to pay $1,596.00 per month in child support, plus $160.00 in arrears. The parties sought discovery, and on November 23, 2011, following a hearing, the court entered an order directing the parties to provide "satisfactory and complete answers [to] reciprocal requests for production of documents" within twenty days. (Order, 11/23/11) (capitalization omitted). The order advised: "if available documents are not

_____

[1] Father is also the 100 percent shareholder of Providence Packaging Group, Inc., (Providence) the S-Corporation that owns Union. (**See** Master's Report, 1/24/14, at 15, 17; Father's Brief, at 10).

produced, upon a petition for contempt, sanctions shall be imposed." (*Id.*) (capitalization omitted); (*see also* N.T. Hearing, 11/23/11, at 41) (court ordering parties to provide answers to discovery and warning that failure to comply will result in sanctions).

On January 10, 2012, Mother filed a motion to compel responses to discovery requests. On January 13, 2012, she filed a petition for contempt. Father filed an answer with new matter on January 20, 2012. On February 16, 2012, the trial court entered an order resolving Mother's petition and Father's response by agreement of the parties.

On March 15, 2012, Father filed a motion for sanctions against Mother for her failure to comply with the court's November 23, 2011 order respecting discovery. *See* Pa.R.C.P. 4019(a)(1)(viii). The court held a hearing on September 17, 2012, at which it addressed outstanding discovery issues. On that same date, it entered an order addressing the tax information to be supplied by both parties, in which it directed Father to provide his 2011 tax return to the court within five days of submission to the Internal Revenue Service (IRS).

The master held hearings on the matter of child support in April and June 2012. On October 31, 2012, the master entered a proposed order directing Father to pay $2,771.94 per month in support, effective February 4, 2011, plus $228.06 in arrears. Both parties filed exceptions, and following a hearing, the court remanded the matter to the master for further

proceedings on the issues of Mother's imputed income, reasonable childcare expenses for Child,[2] and Father's net income.

On February 6, 2013, the trial court found Mother in contempt of discovery proceedings, with sanctions to be determined by March 8, 2013. Pursuant to the court's directive, Father submitted a certification of costs and attorney's fees on February 11, 2013. Mother submitted a response contesting Father's certification of costs and fees on February 25, 2013.

The support master held additional hearings in June and November 2013. On January 24, 2014, the master filed a report stating his determinations that Mother has a gross annual earning capacity of $75,000.00, and Father's annual income is $394,506.00. He also concluded that, while childcare was a necessary expense for Child, weekly daycare expenses of $255.00 were reasonable, but weekly nanny-care expenses of $525.00 were excessive. He entered a proposed order directing Father to pay $2,924.90 per month effective February 14, 2011, $3,031.05 per month effective March 1, 2013, and $2,941.00 per month effective June 1, 2013, plus $200.00 per month towards arrears.

Both parties filed exceptions, and on April 25, 2014, following a hearing, the trial court entered an order denying the parties' exceptions and making the master's January 24, 2014 proposed order a final order. On May

_____

[2] A nanny cared for Child until April 2012, at which time Child began attending the daycare program in which he currently is enrolled.

15, 2014, the court entered an order directing Mother to pay $5,000.00 in attorneys' fees and $1,513.50 in court costs to Father's attorney as a sanction for contempt in the discovery matter. The order advised: "this award takes into account the nature of the contempt, the ability of [Mother] to pay and a review of the charges in relation to the case as a whole." (Order, 5/15/14) (capitalization omitted). Mother filed timely notices of appeal.

On June 12, 2014, the trial court ordered Mother to file concise statements of errors complained of on appeal within twenty-one days. *See* Pa.R.A.P. 1925(b). Mother filed concise statements on July 7, 2014.[3] The court filed an opinion on December 12, 2014, in which it addressed the issues Mother raised in her Rule 1925(b) statements. *See* Pa.R.A.P. 1925(a).[4]

_____

[3] We observe that Mother filed her Rule 1925(b) statements four days after the deadline set by the trial court. (*See* Order, 6/12/14; Rule 1925(b) Statements, 7/07/14). Although this failure generally results in waiver of all claims on appeal, "there are still operative exceptions to Rule 1925(b) waiver with regard to timeliness." *Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*). One such exception is error in the court's Rule 1925(b) order, because "it is the trial court's order that triggers an appellant's obligation[.]" *Id.* (citation omitted). Instantly, the court's order failed to advise that any issue not included in a timely filed statement shall be deemed waived; thus, it did not comply with the technical requirements of Rule 1925(b). *See* Pa.R.A.P. 1925(b)(3)(iv). Under these circumstances, where there is an error in the court's order, we decline to find waiver of Mother's issues on appeal on the basis of her untimely Rule 1925(b) statements.

[4] This Court consolidated the appeals *sua sponte* on July 2, 2014.

Mother raises fourteen issues for our review:

1. Whether the [trial] [c]ourt erred when it permitted [Father] to deduct $600,000 of his majority or wholly controlled business' I.R.S. § 179 accelerated depreciation from his income available for calculating child support[?]

2. Whether the [trial] [c]ourt erred in finding that [Father's] $5.7 million company is not a substantial asset to warrant an upward deviation from the support guidelines[?]

3. Whether the [trial] [c]ourt erred in finding that [Mother's] earning capacity is $75,000 when the record provides no factual support for the finding and there was no finding of willful underemployment[?]

4. Whether the [trial] [c]ourt erred in finding multi-millionaire [Father] with no physical contact with [C]hild may avoid paying nanny care expense because he objected to the expense[?]

5. Whether the [trial] [c]ourt abused its discretion when it denied Mother's discovery request to obtain [Father's] tax returns filed with the I.R.S. absent a showing of fraud?

6. Whether the [trial] [c]ourt erred as a matter of law in issuing monetary sanctions 465 days after the [c]ourt ordered deadline of March 8, 2013?

7. Whether the [trial] [c]ourt erred as a matter of law in finding civil contempt without a hearing on February 6, 2013?

8. Whether the [trial] [c]ourt erred in issuing monetary sanctions after it denied [Father's] contempt motions on January 13, 2012 and February 16, 2012[?]

9. Whether [the trial] [c]ourt erred in issuing monetary sanctions when [Father] did not file on the record a certification of costs and attorney fees as directed by the [c]ourt's order dated February 6, 2013[?]

10. Whether the [trial] [c]ourt erred as a matter of law when it did not follow the procedures outlined in Rule 1910.25, *et seq.* and failed to serve the required contempt notice[?]

11.    Whether the [trial] [c]ourt erred as a matter of law in finding of contempt when it did not find that [Mother] willfully violated a court order[?]

12.    Whether the [trial] [c]ourt erred as a matter of law in finding of civil contempt when it did not conduct a hearing to determine whether [Mother] willfully [] violated a court [order?]

13.    Whether the [trial] [c]ourt, without a hearing, considered [Mother's] ability to purge the contempt when the outstanding [c]ourt [o]rder required no action of [Mother?]

14.    Whether the [trial] [c]ourt abused its discretion when it awarded $5,000 money sanction which exceeds [Mother's] combined monthly income and child support award[?]

(Mother's Brief, at unnumbered pages 8-9).

Initially, we observe that Mother's first five issues challenge the trial court's April 25, 2014 child support order.  Our standard of review is as follows:

> Appellate review of support matters is governed by an abuse of discretion standard.  When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground.  An abuse of discretion is [n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record.  The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses.

***J.P.D. v. W.E.D.***, 114 A.3d 887, 889 (Pa. Super. 2015) (citation omitted).

"[A] master's report and recommendation are to be given the fullest consideration, especially on the issue of the credibility of witnesses."

***Kraisinger v. Kraisinger***, 928 A.2d 333, 344 (Pa. Super. 2007) (citation and internal quotation marks omitted).

In her first issue, Mother argues that the trial court erred in failing to add the IRS section 179 tax depreciation deductions made by Union in 2010 to Father's income available to calculate child support. (***See*** Mother's Brief, at unnumbered pages 11-16).[5] This issue does not merit relief.

> When a payor spouse owns his own business, the calculation of income for child support purposes must reflect the actual available financial resources of the payor spouse. In addition,

> > Our jurisprudence is clear [ ] that the owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts. By the same token, however, we cannot attribute as income funds not actually available or received by the party.

***Fitzgerald v. Kempf***, 805 A.2d 529, 532 (Pa. Super. 2002) (citations and quotation marks omitted).

> > Depreciation and depletion expenses should be deducted from gross income only when they reflect an actual reduction in the personal income of the party claiming the deductions. . . .

> > > \* \* \*

---

[5] Section 179 of the IRS Tax Code allows a business to deduct the full purchase price of financed or leased equipment for the current tax year. ***See*** Section 179.Org, (September 21, 2015), http://www.section179.org/section_179_faqs.html.

. . . Depreciation is an accounting mechanism which allocates the original cost of an asset to the periods in which the asset is used. **Depreciation does not result in income**. Rather, when depreciation expense is claimed, taxable income is decreased by the amount so claimed, resulting in a "marginal income tax savings," not an increase in income.

The presence of a depreciation deduction (on a federal income tax return) or a depreciation expense (on consolidated financial statements) simply signals that a corporation has made capital expenditures, the costs of which it seeks to allocate to the periods in which the assets underlying the capital expenditures are being used. Only by asserting that the capital expenditures, for which depreciation deductions are currently being claimed, were made with cash flows that should have instead been disbursed to the shareholders, can it be argued that a corporation is improperly sheltering cash flows.

\* \* \*

. . . When it is alleged that the corporation has sheltered cash flows . . . it must be shown that the cash flows could have been disbursed to shareholders. In cases where cash flows which could have been disbursed to shareholders have instead been disbursed for business expenses, the corporation must show that the expenditures were necessary for the continued operation and smooth running of the business in order to refute an allegation that the corporation has sheltered cash flows.

*Labar v. Labar*, 731 A.2d 1252, 1255-57 (Pa. 1999) (emphasis added) (citations, footnotes, and original emphasis omitted).

Here, Father testified that Union took the section 179 tax deduction for depreciation of equipment used in the manufacturing of folding cartons for the fast-food industry. (**See** N.T. Hearing, 6/27/13, at 122-24). He explained that it was Union's custom and practice to take the tax deduction for equipment since its founding in 1999, and that it followed these same

accounting principles in 2010-12. (**See id.** at 125-26). He further testified that this method of accounting and the section 179 deductions were not put in place with the purpose of sheltering his income. (**See id.** at 126). He points out that he did not learn that he was Child's father until March of 2011, well after this practice was implemented, and months after the 2010 tax year ended. (**See** Father's Brief, at 9).

The master found that Father testified credibly as to Union's practice of taking the 179 deductions and that Mother provided no credible evidence that Father was sheltering income to avoid child support. (**See** Master's Report, at 18). He concluded that it was not appropriate to add the depreciation expense into Father's income for the purpose of determining child support. (**See id.**). The trial court reviewed the matter and agreed with the master's assessment. (**See** Trial Ct. Op., at 10). After review of the record, we conclude that the trial court did not abuse its discretion in disposing of this issue. **See J.P.D.**, **supra** at 889; **see also Kraisinger**, **supra**, at 344 (concluding depreciation deductions for equipment properly excluded from husband's income where he credibly testified that purchases were necessary business-related expenses and not taken to avoid support obligation). Mother's first issue does not merit relief.

In her second issue, Mother contends that the trial court failed to consider Father's largest asset, his 5.7 million dollar company, in

determining that an upward deviation from the support guidelines is not warranted. (**See** Mother's Brief, at unnumbered pages 16-17).[6] Mother argues that an upward deviation is appropriate because Father's business asset is more than ten times his income. (**See id.**). This issue does not merit relief.

Child support actions are governed by Pennsylvania Rules of Civil Procedure 1910.1 through 1910.50. **See J.P.D.**, **supra** at 889. The amount of a child support award is calculated generally on the bases of the parties' monthly net income. **See** Pa.R.C.P. 1910.16-2. Rule 1910.16—1(d) provides:

> **(d) Rebuttable Presumption.** If it has been determined that there is an obligation to pay support, there shall be a rebuttable presumption that the amount of the award determined from the guidelines is the correct amount of support to be awarded. The support guidelines are a rebuttable presumption and must be applied taking into consideration the special needs and obligations of the parties. The trier of fact must consider the factors set forth in Rule 1910.16-5. The presumption shall be rebutted if the trier of fact makes a written finding, or a specific finding on the record, that an award in the amount determined from the guidelines would be unjust or inappropriate.

Pa.R.C.P. 1910.16-1(d). Rule 1910.16—5 allows for deviation from the guideline amount. It provides:

_____

[6] We note that Father does not agree with Mother's representation that the value of Union is $5.7 million dollars. (**See** Father's Brief, at 11 n.2). He does not provide an alternative valuation. (**See id.**).

   **(a) Deviation.** If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

   *Note:* The deviation applies to the amount of the support obligation and not to the amount of income.

   **(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

   (1) unusual needs and unusual fixed obligations;

   (2) other support obligations of the parties;

   (3) other income in the household;

   (4) ages of the children;

   (5) the relative assets and liabilities of the parties;

   (6) medical expenses not covered by insurance;

   (7) standard of living of the parties and their children;

   (8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and

   (9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5.

   "The trier of fact is to consider all the relevant factors in determining whether a deviation is warranted; any one factor is not necessarily determinative." ***Suzanne D. v. Stephen W.***, 65 A.3d 965, 972-73 (Pa. Super. 2013) (citation omitted).

- 12 -

Here, Mother relies on **Suzanne D.**, **supra**, to support her contention that an upward deviation is warranted based on Father's substantial business interests. (**See** Mother's Brief, at unnumbered page 17). She claims that, under **Suzanne D.**, "[a]n asset that more than doubles the obligor's income is sufficient reason to deviate from the support guidelines." (**Id.**). She maintains that the court considered only Father's car, bank account balances, and real estate in analyzing whether a deviation is appropriate. (**See id.** at 16). We find this argument unpersuasive for the following reasons.

First, the **Suzanne D.** Court discusses the appropriateness of an upward deviation based on the receipt of substantial monetary **gifts**, and the facts of that case are inapposite to the instant case, which does not involve gifts. **See Suzanne D.**, **supra** at 973.

Further, a review of the record reflects that the trial court considered the relevant factors in considering a deviation from the guidelines, including the total amount of income Father receives in the form of salary, bonuses, and distributions as president of Union and 100 percent shareholder of Providence. (**See** Trial Ct. Op., at 11; Master's Report, at 15-18). The court explained the basis for its decision as follows:

> At the master's hearing, Father testified that, in addition to his annual income of $394,506, he owns a 2006 BMW purchased by Union Packaging, and he maintains a checking and savings account with a balance of $15,000 and a 401k valued at $250,000. (**See** Master's Report, at 19). Father owns several properties in Philadelphia including his personal residence which

he purchased for $400,000 in 2008, a condominium he purchased for $300,000 in 2006 (for which his mortgage payment is $1,800, his condominium association fees are $230, and he collects rent in the amount of $1,500 monthly), and a residence jointly owned by him and his estranged wife, which they purchased for $230,000 in 1996. (*See id.*). The master found Father's 2010 Schedule E reflected a loss in the amount of $20,803 and determined that Father therefore has no rental income. (*See id.*).

Father's expenses include a $3,160 monthly mortgage payment (including homeowners insurance, real estate taxes and condominium association fees) for his personal residence and a car insurance payment in the amount of $1,600 annually. (*See id.*). Father also has additional court-ordered support obligations to his estranged wife and their daughter in the amount of $2,900 per month, collectively. (*See id.* at 20).

In consideration of the above-mentioned factors, [the master] concluded that the amounts and types of assets and expenses of Father were not so unusual or extraordinary so as to warrant a deviation from the guidelines. (*See id.* at 19). For the past two years, Mother has been receiving approximately $3,000 per month in child support, which amounts to nearly $36,000 annually on behalf of the parties' three-year-old child. Giving the fullest consideration to the master's findings and based on the fact that Mother's testimony has been largely incredible since the inception of the instant support action, the court found no reason to deviate from the support guidelines.

(Trial Ct. Op., at 11-12) (record citation formatting provided; one record citation omitted).

After review, we discern no abuse of discretion in the trial court's determination that an upward deviation from the guidelines is not appropriate in the instant case. *See J.P.D., supra* at 889. Mother's second issue lacks merit.

In her third issue, Mother argues that the trial court erred in imputing an earning capacity of $75,000.00 to her, where the record provides no

factual support for this determination and there was no finding of willful underemployment. (**See** Mother's Brief, at unnumbered pages 17-19). Mother avers that she has had the same income since Child was born in 2010, and that she is limited to working forty hours per week because of her childcare responsibilities. (**See id.**, at unnumbered page 18). This issue does not merit relief.

Where a party assumes a lower paying job or willfully fails to obtain appropriate employment, the court is permitted to determine the support obligation based on the party's assessed earning capacity. **See Woskob v. Woskob**, 843 A.2d 1247, 1254 (Pa. Super. 2004). Rule 1910.16—2(d)(4) addresses earning capacity, and provides:

> **Earning Capacity**. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16—2(d)(4).

In addressing this issue, we are mindful that "[t]he trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of witnesses." ***Morgan v. Morgan***, 99 A.3d 554, 559 (Pa. Super. 2014), *appeal denied*, 113 A.3d 280 (Pa. 2015) (citation omitted).

Here, Mother testified that, before Child was born, she earned approximately $75,000.00. (***See*** N.T. Hearing, 6/27/13, at 114). After Child was born, she worked part-time for approximately fifteen hours per week, and she increased her hours over time to forty hours per week. (***See id.*** at 106-07, 109, 116). Paystubs Mother submitted show a gross biweekly salary of $800.00 ($20,800.00 annually). (***See*** Master's Report, at 7-8). Mother testified that she is unable to generate the same amount of income that she earned before Child was born because she cannot work the number of hours necessary to develop new business. (***See*** N.T. Hearing, 6/27/13, at 108, 115). However, the master noted several inconsistencies in the evidence and stated that Mother's "testimony has been less than credible regarding her income and expenses." (Master's Report, at 9; ***see id.*** at 10). The trial court also rejected the evidence Mother put forth on this issue as not credible and made an express determination that she is "underworking." (Trial CT. Op., at 13).

After review of the record, we see no reason to disturb the trial court's credibility determination and its decision to impute an earning capacity of $75,000 to Mother. ***See Morgan, supra*** at 559; ***Woskob***, ***supra*** at 1254. Mother's third issue lacks merit.

In her fourth issue, Mother maintains that the trial court erred in allowing Father to avoid payment of nanny-care expenses of $525 per week over a two-year period where he is a multi-millionaire and is not involved with Child. (*See* Mother's Brief, at unnumbered pages 19-22). She argues that the court erroneously concluded that nanny-care is not a reasonable expense but that a daycare at a facility at a rate of $255.00 per week is reasonable. (*See id.* at unnumbered page 20). This issue does not merit relief.

Rule 1910.16—6(a) provides in pertinent part:

Additional expenses permitted pursuant to this Rule 1910.16-6 may be allocated between the parties even if the parties' incomes do not justify an order of basic support.

**(a) Child care expenses.** Reasonable child care expenses paid by either parent, if necessary to maintain employment or appropriate education in pursuit of income, shall be allocated between the parties in proportion to their net incomes and added to his and her basic support obligation. . . .

Pa.R.C.P. 1910.16—6(a).

Here, the record reflects that, although the parties' share legal custody of Child, Mother did not consult Father prior to hiring a nanny or enrolling him in daycare. (*See* N.T. Hearing 6/27/13, at 69-70, 74-76; Master's Report, at 13). Once Mother replaced nanny-care with daycare for Child, the actual cost of childcare was reduced significantly, by more than half. (*See* N.T. Hearing 6/27/13, at 70; Master's Report, at 13). The court determined that the expense of nanny-care was not reasonable where comparable

childcare services were available at a much lower cost, especially in light of Mother's failure to discuss the appropriate mode of childcare with Father. (**See** Trial Ct. Op., at 15-16). The court also noted that Mother's testimony regarding her large nanny-care payments did not comport with her testimony regarding her low income. (**See id.** at 16).

After review of the record, we discern no abuse of discretion in the trial court's disposition of this issue. **See J.P.D., supra** at 889. Mother's fourth claim does not merit relief.

In her fifth issue, Mother asserts that the trial court abused its discretion when it denied her discovery request to obtain Father's federal tax returns absent a showing of fraud. (**See** Mother's Brief, at unnumbered pages 22-23). Although she acknowledges that the court **did** grant her motion and ordered Father to produce his tax returns, she complains that the court did not permit her to obtain the returns directly from the IRS. (**See id.**). This issue is waived for multiple reasons.

First, Pennsylvania Rule of Appellate Procedure 1925(b) requires an appellant to "concisely identify each ruling or error that [she] intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii); **see also Greater Erie Indus. Dev. Corp., supra** at 224 ("[F]ailure to comply with the minimal requirements of

- 18 -

Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised.") (case citation and emphasis omitted).

Here, with respect to this issue, Mother's Rule 1925(b) Statement reads: "Whether the [c]ourt abused its discretion when it denied Mother's discovery request to obtain [Father's] tax returns filed with the I.R.S. absent a showing of fraud?" (Rule 1925(b) Statement, 7/07/14, at 2 ¶ 5). The trial court concluded that Mother's claim is factually inaccurate because, contrary to her assertion, it **did grant** Mother's motion and ordered Father to provide his tax returns. (*See* Order, 9/17/12; Trial Ct. Op., at 17; *see also* Father's Brief, at 19 (averring "Mother inaccurately states the facts in this matter.")). The court was not able to address Mother's specific allegation that it should have permitted her to obtain the tax returns directly from the IRS because Mother did not identify this claim in her Rule 1925(b) statement. Thus, she waived the issue for purposes of appeal. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii).

Furthermore, in her argument spanning less than one page, Mother utterly fails to develop her claim with citation to, and discussion of, pertinent legal authority. (*See* Mother's Brief, at unnumbered pages 22-23); Pa.R.A.P. 2119(a)-(b), 2101. Thus, her claim is waived for this reason as well.[7]

_____

[7] We note that Mother's argument appears disingenuous, given that the court ordered Father to produce his tax returns and Father complied. (*See* Order, 9/17/12; Master's Report, at 15-16).

Mother's remaining nine issues challenge the trial court's May 15, 2014 order imposing sanctions on her for violation of its discovery order, and directing her to pay Father's attorneys' fees and court costs.

> . . . The decision whether to sanction a party for the failure to comply with a discovery order, and the degree of that sanction, are within the discretion of the trial court. This Court will disturb such a sanction only where the trial court has abused its discretion. The propriety of the sanction is determined by examining: (1) the prejudice caused to the opposing party and whether that prejudice can be cured; (2) the defaulting party's willfulness or bad faith in failing to comply with the order; (3) the number of discovery violations, and; (4) the importance of the precluded evidence in light of the failure.

***Jacobs v. Jacobs***, 884 A.2d 301, 305 (Pa. Super. 2005) (citations omitted).

In her sixth issue, Mother claims that the court erred by issuing a monetary sanction against her 465 days after its own deadline. (***See*** Mother's Brief, at unnumbered page 23). Specifically, she argues that the court's action violated Canon 3B.(1) of the Code of Judicial Conduct. (***See id.***). This issue merits no relief.

At the outset, we observe that this issue is not properly before this Court. "It is beyond cavil that the Court of Judicial Discipline has jurisdiction over the general subject matter [of] determining whether an individual engaged in judicial misconduct." ***In re Melograne***, 812 A.2d 1164, 1167 (Pa. 2002); ***see also In re Lokuta***, 11 A.3d 427, 434 (Pa. 2011), *cert. denied*, 132 S.Ct. 242 (2011) (stating judicial officer has right to appeal final adverse order of Court of Judicial Discipline to Pennsylvania Supreme Court). Mother, in effect, concedes this point in her brief, stating "[o]f course, it is

not the authority of the appellate courts, in deciding controversies between litigants, to decide whether a judge has violated the canon of the Code of Judicial Conduct." (Mother's Brief, at unnumbered pages 23-24). Thus, Mother's sixth claim is not properly before us and we decline to address it.

In her seventh issue, Mother argues "the [c]ourt erred as a matter of law in finding civil contempt without a hearing on April 25, 2013."[8] (Mother's Brief, at unnumbered page 24). This issue is waived and would not merit relief.

First, Mother's single-paragraph argument on this issue is largely incoherent,[9] contains inconsistencies in dates, and makes bald statements such as "[t]he statue [sic] requires a hearing," (*id.*), without citation to any legal authority. Thus, she waived this undeveloped issue for purposes of appeal. Pa.R.A.P. 2119(a),(b); 2101.

Second, "[i]ssues not raised in the lower court cannot be raised for the first time on appeal and are considered waived. Pa.R.A.P. 302(a)." **Green v. Green**, 69 A.3d 282, 286 (Pa. Super. 2013). Here, at the conclusion of the April 25, 2014 exceptions hearing, both parties agreed that the issue of

_____

[8] This date differs from the date Mother references in her statement of the questions involved (February 6, 2013). (**See** Mother's Brief, at unnumbered page 8).

[9] For example, Mother states: "The court did not hold a hearing on May 15, 2014. The hearing that lead [sic] to the May 15, 2014 hearing was held on April 25, 2013." (Mother's Brief, at unnumbered page 24).

- 21 -

contempt and the award of counsel fees could be disposed of based on the their previously submitted briefs, and that oral argument on the matter was unnecessary. (*See* Exceptions Hearing, 4/25/14, at 99-101). Thus, Mother's issue is waived for this reason as well.

Moreover, to the extent we can discern it, Mother's issue would not merit relief. "Neither notice nor a hearing is a necessary prerequisite to the imposition of sanctions pursuant to Pa.R.C.P. 4019." *Hein v. Hein*, 717 A.2d 1053, 1056 (Pa. Super. 1998) (citation omitted); *see also Sahutsky v. Mychak, Geckle & Welker, P.C.*, 900 A.2d 866, 870 (Pa. Super. 2006), *appeal denied*, 916 A.2d 1103 (Pa. 2007) (noting neither notice nor hearing are prerequisite to imposition of sanctions pursuant to Rule 4019). Thus, "[Mother's] contention that the trial court was required to hold a hearing before imposing sanctions is meritless." *Hein, supra* at 1056. Therefore, Mother's seventh issue is waived and would not merit relief.

In her eighth issue, Mother argues "the [c]ourt erred in issuing monetary sanctions after it denied [Father's] contempt motions on January 13, 2012 and February 16, 2012." (Mother's Brief, at unnumbered page 24). This claim lacks record support.

Specifically, the record reflects that **Mother** filed a petition for contempt on January 13, 2012, that Father filed an answer with new matter, and that the court entered an order resolving Mother's petition and Father's answer on February 16, 2012. (*See* Order, 2/16/12; Trial Ct. Op., at 19). Father filed his motion giving rise to the court's imposition of monetary

sanctions on **March 15, 2012**, approximately one month after entry of the February 16, 2012 order. Based on this record, we agree with the trial court that Mother has failed to explain how the court's disposition of two prior pleadings affect Father's subsequent motion for sanctions. (*See* Trial Ct.Op., at 19). Mother's eighth issue is specious.

In Mother's ninth issue, she claims that the trial court erred in issuing monetary sanctions when Father did not file on the record a certification of costs and attorney fees. (*See* Mother's Brief, at unnumbered page 25). She claims that the court deprived her of the opportunity to "cross-examine the veracity of evidence" pertaining to this issue. (*Id.*). This claim does not merit relief.

The trial court addressed Mother's contention as follows:

> Mother is correct that Father's certification of costs was not filed and docketed. However, Father did in fact submit a certification of costs and attorney's fees, along with a supporting brief, directly to the [trial court], as ordered. Mother was properly served, and counsel for Mother submitted a reply brief to the [trial court] as well. (*See* Father's Certification of Costs and Attorney's Fees, 2/11/13, Certificate of Service; Mother's Response to Father's Certification of Costs and Attorney Fees, 2/25/13, at unnumbered pages 1-7). Given the fact that the court did not order the certification of costs to be formally filed and intended to use it as an aid in determining the amount of sanctions to be imposed, this [c]ourt accepted Father's certification of costs as an additional evidentiary exhibit. The court made no error in doing so.

(Trial Court Op., at 20) (record citation formatting provided).

After review, we discern no abuse of discretion in the trial court's disposition of this issue. *See Jacobs, supra* at 305. The record reflects

that Father complied with the court's directive and that Mother responded to his certification of costs and attorney fees. Mother's ninth issue lacks merit.[10]

In Mother's tenth issue, she argues "the [co]urt erred as a matter of law when it did not follow the procedures outlined in [Pa.R.C.P.] 1910.25, *et seq.* and failed to serve the required contempt notice." (Mother's Brief, at unnumbered page 25). She argues "[t]he support contempt statute requires [n]otice and a hearing." (*Id.*) (citation omitted). This issue lacks merit.

Rule 1910.25 addresses enforcement of **support** orders and a finding of civil contempt related thereto. *See* Pa.R.C.P. 1910.25(a). However, in the instant case, Mother was found to be in contempt for her failure to comply with the court's order regarding **discovery**—not child support. (*See* Father's Motion for Sanctions against Mother, 3/15/12; Trial Ct. Op., at 8); *see also* Pa.R.C.P. 4019(a)(1)(viii) (authorizing court to enter appropriate order where party fails to comply with order respecting discovery). Thus, Rule 1910.25 does not apply in the instant case. Mother's tenth issue is specious.

_____

[10] We note that Mother's reliance on **Pennsylvania v. Ritchie**, 480 U.S. 39 (1987), a United States Supreme Court criminal case involving confrontation clause issues, is unavailing because the issue addressed in that case is inapposite to Mother's ninth claim. (**See** Mother's Brief, at unnumbered page 25); **see also Ritchie, supra** at 42-43 (addressing "whether and to what extent a State's interest in the confidentiality of its investigative files concerning child abuse must yield to a criminal defendant's Sixth and Fourteenth Amendment right to discover favorable evidence.").

In her eleventh issue, Mother argues that the trial court erred by finding her in contempt when it did not find that she willfully violated a court order. (**See** Mother's Brief, at unnumbered page 26). This issue does not merit relief.

Rule 4019 provides, in pertinent part:

Rule 4019. Sanctions

(a)(1) The court may, on motion, make an appropriate order if

\* \* \*

(viii) a party or person otherwise fails to make discovery or to obey an order of court respecting discovery.

\* \* \*

(c) The court, when acting under subdivision (a) of this rule, may make

\* \* \*

(4) an order imposing punishment for contempt, except that a party may not be punished for contempt for a refusal to submit to a physical or mental examination under Rule 4010;

(5) such order with regard to the failure to make discovery as is just.

Pa.R.C.P. 4019(a)(1)(viii), (c)(4),(5).

Here, the trial court explained:

Father properly filed a petition for sanctions on March 15, 2012 for Mother's failure to cooperate with the discovery process in accordance with this [c]ourt's November 23, 2011 [o]rder requesting, among other things, monetary sanctions "for reasonable expenses including, but not limited to, attorney's fees, incurred in obtaining an order of compliance." (Father's Motion for Sanctions against Mother, 3/15/12, at unnumbered page 3, ¶ 17, subsection e). The November 23, 2011 [o]rder granted cross motions to compel discovery and directed both

- 25 -

parties to provide "satisfactory and complete answers [to] reciprocal requests for production of documents . . . within twenty (20) days." (Order, 11/23/11). In addition, the order specifically states that "if available documents are not produced, upon petition for contempt, sanctions shall be imposed." (*Id.*). As Mother failed to provide the requested financial documents, the court properly found her in contempt on February 6, 2013 and imposed sanctions in the form of counsel fees on May 15, 2014.

(Trial Court Op., at 19; *see also id.* at 21) (record citation formatting provided); (*see also* N.T. Hearing, 9/17/12, at 63) (court stating that Mother "has been dragging her feet and . . . raising more red flags" in failing to provide discovery).

After review of the record, we discern no abuse of discretion in the trial court's disposition of the issue. *See Jacobs, supra* at 305. Mother's eleventh issue does not merit relief.

In Mother's twelfth issue, spanning a single page, she simply reiterates her argument that the court erred in finding her in contempt without holding a hearing to determine if she willfully violated the discovery order. (*See* Mother's Brief, at unnumbered page 27). This issue fails for the reasons previously discussed in this memorandum.

We will address Mother's thirteen and fourteenth arguments together because they are related. In Mother's thirteenth issue, she argues that the court erred in imposing sanctions without considering her ability to purge herself of the contempt, where the outstanding court order required no action on her behalf. (*See id.*, at unnumbered page 28). In her fourteenth issue, she contends that the court's award of $5,000.00 in counsel fees was

an abuse of discretion because the sanction exceeds her combined monthly income and child support award. (***See id***.). These issues do not merit relief.

> Sanctions for civil contempt can be imposed for one or both of two purposes: to compel or coerce obedience to a court order and/or to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance with a court order. Attorneys' fees and other disbursements necessitated by the contemnor's noncompliance may be recovered by the aggrieved party in a civil contempt case. Because an award of counsel fees is intended to reimburse an innocent litigant for expenses made necessary by the conduct of an opponent, it is coercive and compensatory, and not punitive. . . .

***Rhoades v. Pryce***, 874 A.2d 148, 152 (Pa. Super. 2005), *appeal denied*, 899 A.2d 1124 (Pa. 2006) (citations omitted).

This Court has stated that "a court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge [her]self of the contempt." ***Orfield v. Weindel***, 52 A.3d 275, 279 (Pa. Super. 2012) (citation omitted).

Here, the trial court explained that it:

> . . . intentionally waited until Mother's earning capacity was determined in order to establish her ability to pay and impose sanctions accordingly. (***See*** Order, 5/15/14). Based on the finding that Mother's earning capacity is $75,000.00 annually, this [c]ourt determined that $5,000 in counsel fees was reasonable to compensate Father for his expenditures on the litigation while compelling Mother to comply with the [discovery] order.

\*    \*    \*

. . . Mother's assertion that the $5,000 sanction exceeds her combined monthly income and child support award is factually incorrect[.] . . . [T]he trial court determined Mother's annual net earning capacity was $75,000; said income computes to $6,250 monthly.  Additionally, the current support order requires Father to pay over $3,000 to Mother monthly (including arrears).  (**See** Order 4/25/14).

Based on the certification of costs and fees submitted by Father's counsel, the court found that $5,000 would serve to compensate Father for most of his expenditures resulting from Mother's noncompliance with the [discovery] order.  Furthermore, because Mother has repeatedly demonstrated contemptuous behavior during the pendency of the instant litigation and has continuously been found incredible, the court imposed a monetary sanction it believed was harsh enough to coerce her into following its current order.  The court did not abuse its discretion nor did it impose a punitive sanction, as Mother is more than capable of paying the $5,000 . . . It should also be noted that the court in fact determined the $5,000 figure after taking into consideration Father's request for more than $21,000 in counsel fees.  (**See** Father's Certification of Costs and Attorney's Fees, 2/11/13, at unnumbered page 2).

(Trial Ct. Op., at 22-23) (record citation formatting provided).

After review of the record, we discern no abuse of discretion in the trial court's disposition of these issues.  **See Jacobs, supra** at 305.  Mother's thirteenth and fourteenth issues lack merit.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/24/2015</u>