**[J-76-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | |
|---|---|
| IN THE INTEREST OF: G.G.B., A MINOR | : No. 35 WAP 2024 |
| | : |
| | : Appeal from the Order of the |
| APPEAL OF: J.B., MOTHER | : Superior Court entered September |
| | : 25, 2024, at No. 1353 WDA 2023, |
| | : Affirming the Order of the Court of |
| | : Common Pleas Allegheny County |
| | : Juvenile Division entered November |
| | : 8, 2023, at No. CP-02-DP-0000410- |
| | : 2023. |
| | : |
| | : ARGUED: October 7, 2025 |

## OPINION

**JUSTICE DOUGHERTY**                    **DECIDED: MARCH 26, 2026**

In this Children's Fast Track appeal, we consider the appropriate legal standard for determining initial venue in dependency proceedings under the Juvenile Act when a child is born, and remains, in a hospital located in a county where neither parent resides. As detailed below, we hold Section 6321 of the Juvenile Act and Pa.R.J.C.P. 1300 impose the applicable standard.[1]    Under the plain terms of these provisions, venue in a

---

[1] Section 6321 pertinently provides:

**(b) Venue.**--A proceeding under this chapter may be commenced:

(1) In the county in which the child resides.

(2) If delinquency is alleged, in the county in which the acts constituting the alleged delinquency occurred.

(continued…)

dependency proceeding is proper in the county where the child resides or is present, not the county or counties where the parents reside. Here, the child did not reside, nor was she present, in the county where the trial court was located. Accordingly, the trial court lacked venue, and we vacate the order of the Superior Court below.

## I. Background

In 2022, J.B. (Mother) and R.B. (Father) had a baby, M.B., who was born prematurely and placed in the Neonatal Intensive Care Unit (NICU). Both Mother and Father resided in Allegheny County, Pennsylvania. The Allegheny County Office of Children, Youth and Families (ACCYF) received a referral that parents were declining to follow parenting and medical advice regarding M.B. Ultimately, M.B. was adjudicated dependent and placed in kinship care.

On August 9, 2023, while M.B. remained in kinship care, Mother and Father had a second child, G.G.B. Although Mother resided in Fayette County, Pennsylvania, at the time, she traveled to West Virginia to have the child. G.G.B. was born at the West Virginia University Children's Hospital in Morgantown. Father, who continued to reside in Allegheny County, was not present for G.G.B.'s birth. Like M.B., G.G.B. was also born prematurely, at thirty-three weeks gestation, and weighed only three pounds and seven ounces. As a result, G.G.B. likewise received treatment in the NICU, where she was placed on a Continuous Positive Airway Pressure (CPAP) machine and received feedings through a nasal gastric tube. A urine test revealed Mother tested positive for tetrahydrocannabinol, the main psychoactive compound in cannabis, at birth. Hospital staff reported Mother "did not understand why the baby needed to be in the NICU." N.T.

---

(3) If dependency is alleged, in the county in which the child is present when it is commenced.

42 Pa.C.S. §6321(b). Similarly, Rule 1300 pertinently provides "[a] dependency proceeding shall be commenced in: (1) the county in which the child is present; or (2) the child's county of residence." Pa.R.J.C.P. 1300(A).

Shelter Care Re-Hearing, 8/18/23, at 26. Mother also claimed "the baby can breathe room air, [G.G.B.] didn't [ ] need the CPAP machine, and stated that the baby will not be in the NICU past 35 weeks." *Id*.

On August 10, 2023, G.G.B.'s hospital social worker informed ACCYF that Mother failed to demonstrate an understanding of G.G.B.'s medical needs and refused to follow medical advice regarding the baby's care. As a result, ACCYF sought an Emergency Custody Authorization (ECA) on behalf of G.G.B. The Court of Common Pleas of Allegheny County (trial court) granted the motion.

Thereafter, on August 11, 2023, ACCYF filed a Shelter Care Application, which the trial court approved. Following a shelter care hearing on August 14, 2023, the trial court denied ACCYF's request, finding "[the] ECA has expired. Child is hospitalized in W[est] Virginia. Mother resides in Fayette County. Allegheny County does not have jurisdiction." Hearing Officer Recommendation, 8/14/23, at 1.

ACCYF immediately filed an Emergency Motion for Shelter Care Re-Hearing, contesting the trial court's finding Allegheny County lacked jurisdiction. In its motion, ACCYF averred, *inter alia*, "Mother currently lives in Fayette County and traveled to West Virginia to give birth to [G.G.B.]. Mother stated that she gave birth in West Virginia in an attempt to avoid [ACCYF] involvement. Father currently resides in Allegheny County, and both are court active in Allegheny County." Motion for Re-Hearing, 8/14/23, at ¶4. The motion further stated, "[ACCYF] has been in contact with West Virginia Health and Human Services. They recognize the safety concerns however their position is that jurisdiction resides in Allegheny County due to the current dependency case with the parents in addition to their residence in Pennsylvania." *Id*. at ¶7. The motion explained "[ACCYF] is unable to provide services and continue to work on [c]ourt ordered goals outside of

Allegheny County." *Id*. at ¶9. On August 16, 2023, the trial court granted the motion and scheduled a Shelter Care re-hearing for August 18, 2023.

At the outset of the re-hearing, the parties and court discussed jurisdiction and venue, treating these distinct terms as interchangeable. Mother "ask[ed] the [c]ourt to dismiss the shelter care application for lack of personal jurisdiction." N.T. Shelter Care Re-Hearing, 8/18/2023, at 4. Mother argued that because G.G.B. "has never stepped foot in Allegheny County and has never lived in Allegheny County, it would be appropriate for [the c]ourt to decline jurisdiction." *Id*. at 15. She continued, "[i]t is not so much that no one has jurisdiction to [sic] this child, it is that Fayette County is the proper jurisdiction." *Id*. Father largely agreed, noting he had only been a resident of Allegheny County for the last thirty-eight days. Moreover, Father explained he was residing in a relative's home rather than his own, which "cannot be considered his permanent residence." *Id*. at 17.

ACCYF, however, disagreed, stating "[G.G.B.] has two parents. One parent resides in Fayette County. The other parent resides in Allegheny County. . . . [T]he father's county of residence applies to the newborn, just as equally as mother's does. There can be multiple venues that are appropriate under the Juvenile Act." *Id*. at 6-7. Counsel for G.G.B. joined ACCYF's argument, explaining, "Father is working with the Agency here. He is working towards services here. He is working towards visitation here. All actions would point that he intends to remain here and work with services here." *Id*. at 19.

Upon hearing arguments from all the parties, the trial court determined Allegheny County was an appropriate venue. As a preliminary matter, the court ruled it was not "bound to make a finding that West Virginia is appropriate, when there has been uncontested testimony that [Mother] went to West Virginia specifically to avoid child welfare authorities in this Commonwealth." *Id*. at 21. Relying on *In re G.B.*, 530 A.2d 496

(Pa. Super. 1987), the court explained it "should depend on a determination of how to serve the best interest of the dependent child when establishing residence." N.T. Shelter Care Re-Hearing, 8/18/2023, at 22. To make that determination, the court considered that Father "was the parent who was making much more progress on his goals. . . . He was the parent who seemed to actually be, if [the court] had to make an assessment at that time, the more viable placement[.]" *Id*. at 23. The court also considered that "both of the other arguable jurisdictions, including West Virginia and Fayette [County], have vocalized their desire for Allegheny County to be the primary jurisdiction in this matter[.]" *Id*. at 24. Ultimately, the trial court concluded "there is one parent who lives in this county, which makes it an appropriate venue. And, secondly . . . there is no clear residence, and this would be in the best interest of [G.G.B.], especially given the substantially similar issues in the two cases." *Id*.

Following the re-hearing, the trial court granted ACCYF's request for legal and physical custody of G.G.B. The court explicitly found "Allegheny County has jurisdiction in this matter." Shelter Care Order, 8/18/23, at 1. The court further ordered that if G.G.B. were discharged from the hospital prior to adjudication, she should be placed in the same kinship home as her older sibling, M.B.

Prior to the adjudicatory hearing, Mother filed a Motion to Transfer Venue seeking to transfer the case from Allegheny County to Fayette County. She alleged that "[u]ntil recently, Father resided in Fayette County with Mother." Motion to Transfer, 8/28/23, at ¶11. It was only in July 2023, one month prior to G.G.B.'s birth, that "Father left the residence he and Mother shared and began staying with a family member in . . . Allegheny County." *Id*. at ¶12. Citing Section 5427 of the Uniform Child Custody and Jurisdiction Enforcement Act (UCCJEA),[2] Mother contended both parents "desire[d] for [G.G.B.]'s

---

[2] Section 5427 provides:
(continued…)

case to be heard in Fayette County[.]" *Id*. at ¶¶14-15. In an order dated August 30, 2023, the trial court denied Mother's motion. Mother appealed the denial of the transfer, and the Superior Court subsequently quashed the appeal as an unappealable interlocutory order. *See In the Interest of: G.G.B.*, 1193 WDA 2023 (*per curiam* order filed Nov. 3, 2023).

Meanwhile, the adjudicatory hearing was held in the trial court on October 11, 2023. After hearing testimony from Mother and Father, as well as various caseworkers and social workers assigned to G.G.B.'s case, the court adjudicated G.G.B. dependent pursuant to 42 Pa.C.S. §6302.[3] The trial court ordered G.G.B. to remain in the same kinship home with M.B. Referencing Mother's request to transfer, the trial court explained "because [G.G.B.] has been adjudicated, I am going to call Fayette County and [see] if they will accept it for intercounty transfer, but I have no idea if they will or won't. . . . They are not required under law to accept a case." N.T. Adjudicatory Hearing, 10/11/23, at 122.[4]

---

A court of this Commonwealth which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court.

23 Pa.C.S. §5427(a).

[3] Section 6302 defines a "dependent child" as including "[a] child who: (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S. §6302.

[4] The record does not reflect whether the trial court did, in fact, reach out to Fayette County.

Mother appealed the trial court's dependency order, raising the following issue: "[d]id the [t]rial [c]ourt abuse its discretion and/or err as a matter of law when it adjudicated G.G.B. dependent pursuant to 42 Pa.C.S. §6302(1) when venue in Allegheny County was improper as Mother resides in Fayette County, Mother and Father desire the matter to proceed in Fayette County, and G.[G.]B. has never been in Allegheny County." Mother's Superior Court Brief at 11; *see also* Mother's Concise Statement of Matters Complained of on Appeal, 11/10/23, at 1 ("The trial court abused its discretion and/or erred as a matter of law when it adjudicated G.[G.]B. dependent pursuant to 42 Pa.C.S. §6302(1) when venue in Allegheny County was improper as Mother resides in Fayette County, Mother and Father desire the matter to proceed in Fayette County, and G.[G.]B. has never been in Allegheny County.").

The Superior Court affirmed the trial court's order. *See Interest of G.G.B.*, 328 A.3d 524, 2024 WL 4285756 (Pa. Super. Sept. 25, 2024) (unpublished memorandum).[5] The lead opinion framed the issue before the panel as whether "the trial court erred in denying [Mother's] motion to transfer venue to Fayette County." *G.G.B.*, 2024 WL 4285756, at *2. It held "[t]he Juvenile Act and the Rules of Juvenile Court Procedure both require the juvenile court to focus on the location of the child, and not the parents, when determining the proper venue for a dependency proceeding." *Id.*, *citing* 42 Pa.C.S. §6321(b)(1), (b)(3), (c)(1), and Pa.R.J.C.P. 1300(A), (B). In particular, the lead opinion rejected the notion that venue in the case of a newborn may be determined by the residences of the parents:

> Although the idea that the venue for a newborn should be the residence of a parent instead of the residence of the newborn has common sense advantages, neither the Juvenile Act nor the Rules authorize such a finding. Rather, both the Juvenile Act and the Rules clearly and unambiguously

---

[5] The panel did not produce a majority decision. Judge Dubow authored the lead opinion, and Judges Kunselman and Nichols each authored concurring opinions.

provide that the juvenile court should determine venue according to the location of the child and not the parents. They make no exception for newborns. This Court lacks the authority to re-write the Juvenile Act or the Rules to so provide; only the legislature or the Supreme Court has such authority.

*Id.* at *3 n.5.

Applying this understanding of the law, the lead opinion noted that "when Mother filed a motion to transfer venue to Fayette County, [G.G.B.] was not present in Fayette County nor residing in Fayette County." *Id.* at *3. "Accordingly," the lead opinion ruled, "based on the plain language of both the Juvenile Act and the Rules of Juvenile Court Procedure, Mother did not meet her burden to demonstrate that venue should be transferred." *Id.* Hence, it "conclude[d] that the trial court did not abuse its discretion when it denied Mother's motion to transfer venue to Fayette County." *Id.* The lead opinion acknowledged G.G.B. "likewise[ ] did not live in Allegheny County at the time that Mother filed her motion to transfer venue" but emphasized "it is not this [c]ourt's role to determine whether Allegheny County had personal jurisdiction over [G.G.B.], as Mother does not raise this issue for our review." *Id.* at *3 n.3. "Rather, we are limited to considering whether the trial court abused its discretion in denying Mother's motion to transfer venue." *Id.*

In her concurring opinion, Judge Kunselman argued the lead opinion misconstrued the "precise question" before the panel. *Id.* at *4 (Kunselman, J., concurring). She contended: "[i]n her first appeal, Mother challenged the denial of her request to transfer the case from Allegheny County to Fayette County[,] [b]ut in this, her second appeal, Mother challenges venue in Allegheny County." *Id.* (footnote omitted); *see also id.* at *5 ("[T]he simple question Mother asks us to resolve is whether venue to conduct a dependency adjudication hearing was proper in Allegheny County."). According to Judge Kunselman, the lead opinion "addressed the question from the prior appeal[,]" which was quashed as interlocutory, "not the question at issue here." *Id*. at *4. Addressing the venue

question raised in the present appeal, she noted the Juvenile Act and Rules of Juvenile Court Procedure provide that "a dependency proceeding may be commenced in either the county in which the child resides or the county in which the child is present." *Id.* at *5. Moreover, in her view, "the residence of a newborn who has not left the hospital should be determined by the residence of the newborn's parents." *Id.* at *3. In support of this position, Judge Kunselman argued:

> If my analysis is incorrect, then [G.G.B.] — and other newborns who are removed from their parents' care before the parents take the baby home from the hospital — have no residence at all. We must not avert our eyes from the effect that such a holding would have on the at-risk children across the Commonwealth, many of whom test positive for illicit drugs at birth and whose dependency proceedings commence immediately thereafter.

*Id.* at *6.

Applying these principles, Judge Kunselman observed "[a]ll agree that [G.G.B.] was never present in Allegheny County." *Id.* at *5. Regarding G.G.B.'s residency, the concurrence acknowledged that since Mother resided in Fayette County when the case began, "Fayette would have . . . been a proper venue." *Id.* at *6. "However, at the time of the commencement [of the case], Father resided in Allegheny County, albeit [ ] briefly." *Id.* She maintained that "Father's residency was sufficient to find that [G.G.B.] resided in Allegheny County for purposes of 42 Pa.C.S. §6321(b)(1) and Pa.R.J.C.P. 1300(A)(2)." *Id.* "Thus," Judge Kunselman concluded, "although the juvenile court could have determined that the case belonged in Fayette County, the court did not err when it determined that Allegheny County was a proper venue." *Id.*; *see also id.* ("Multiple counties can have 'venue' in the first instance."). In addition, she opined that the best interests of the child should only be considered in determining whether a dependency case should be transferred, not to decide the issue of venue, which turns exclusively on "two questions: where does the child reside; and where is the child present." *Id.* She

viewed the trial court's consideration of G.G.B.'s best interests in resolving the venue question to be "erroneous but harmless." *Id.*

Judge Nichols, in her separate concurrence, agreed with the lead opinion and Judge Kunselman that "the trial court's choice of Allegheny County as venue should be affirmed[.]" *Id.* (Nichols, J., concurring). Judge Nichols also agreed with Judge Kunselman that "the trial court properly looked to the parents' residences to designate a residence for [G.G.B.]" *Id.* at *7. She disagreed, however, with Judge Kunselman's conclusion that "the trial court erred in considering factors other than where Mother and Father resided." *Id.* She explained that in this case, the residences of the parents "are simply Allegheny County and Fayette County, with no effective distinction between them." *Id.* at *8. Under an approach that considers only the parents' residences, "the trial court must choose venue to commence proceedings between facially equivalent options while prohibited from considering relevant factors to distinguish them." *Id.* Instead, Judge Nichols proposed the trial court should be allowed to consider additional "factors likely to impact the care, protection, and safety of [G.G.B.]" *Id.* at *9. This approach, Judge Nichols reasoned, aligns with the Juvenile Act's fundamental principle that "the health and safety of the child supersede all other considerations." *Id.* at *8 (citation omitted).

We granted Mother's petition for allowance of appeal to consider the following question, rephrased for clarity:

> When a child is born in a county where neither parent resides, what is the appropriate analysis and legal standard for determining initial venue in dependency proceedings under the Juvenile Act?

*In the Interest of G.G.B.*, 331 A.3d 522, 523 (Pa. 2024) (*per curiam*).

Thereafter, following briefing and oral argument, this Court ordered supplemental briefing on the question of whether the trial court had subject matter jurisdiction to decide the case, which had not been specifically raised by the parties or by the courts below:[6]

> AND NOW, this 3rd day of November, 2025, the parties are hereby directed to file supplemental briefs addressing whether the Court of Common Pleas of Allegheny County had subject matter jurisdiction to decide this case. In particular, the parties should address whether the Uniform Child Custody Jurisdiction and Enforcement Act provided a basis for subject matter jurisdiction. *See* 23 Pa.C.S. §§5421, 5424; *see also In re Z.H.*, 859 S.E.2d 399, 410 (W. Va. 2021) (holding that "a newborn child's hospital stay incident to birth is insufficient to confer home state subject matter jurisdiction" in West Virginia). . . .

*In the Interest of G.G.B.*, 35 WAP 2024 (*per curiam* order filed Nov. 3, 2025).[7]

## II. Analysis

## A. Subject Matter Jurisdiction

We begin with consideration of whether the trial court possessed the requisite subject matter jurisdiction. "The question of subject matter jurisdiction is purely one of law, and thus our standard of review is *de novo*, and our scope of review is plenary." *Domus*, 252 A.3d at 634 (quotations and citation omitted).[8] Mother argues 23 Pa.C.S.

---

[6] Generally, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). However, because it is axiomatic a court may not act beyond its lawful subject matter jurisdiction, the issue of subject matter jurisdiction "is a question that is not waivable and may be raised by a court on its own motion." *Domus, Inc. v. Signature Building Systems of PA, LLC*, 252 A.3d 628, 636 (Pa. 2021) (citation omitted).

[7] After supplemental briefs were submitted, counsel for G.G.B. filed an "Application for Leave to File Post-Submission Communication . . . to Request Additional Oral Argument." *See* Application for Leave, 11/21/25, at 1. The request for additional oral argument is denied.

[8] More generally, the appellate standard of review in dependency matters "is of the broadest type; that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact, and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported." (continued…)

§5421 (Initial child custody jurisdiction) of the UCCJEA conferred subject matter jurisdiction on the trial court.[9] Mother points to *In re: Z.H.*, 859 S.E.2d 399 (W. Va. 2021),

---

*Velasquez v. Miranda*, 321 A.3d 876, 891 (Pa. 2024), *quoting Int. of K.N.L.*, 284 A.3d 121, 132-33 (Pa. 2022).

[9] Section 5421 of the UCCJEA provides:

**(a) General rule.**--Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

(ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).

**(b) Exclusive jurisdictional basis.**--Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.

(continued…)

wherein the Supreme Court of Appeals of West Virginia held "a newborn child's hospital stay incident to birth is insufficient to confer home state jurisdiction" pursuant to that state's adoption of the UCCJEA. Mother's Supplemental Brief at 11. According to Mother, "[t]he facts in *In re Z.H.* are analogous" to the instant case and demonstrate West Virginia cannot be G.G.B.'s home state under the statute. *Id*. at 12. Mother claims we must then do as the West Virginia Supreme Court did in *Z.H.*, and "consider the next jurisdictional basis — significant connection." *Id*.[10] It is under this prong Mother believes the UCCJEA confers jurisdiction, as "between West Virginia and Pennsylvania, Pennsylvania easily has the more significant connection to G.G.B. and her parents." *Id*. at 13. Mother explains neither of G.G.B.'s parents ever lived in West Virginia or had any connection to the state other than G.G.B.'s birth. Conversely, Mother notes, both parents are long-time Pennsylvania residents and Pennsylvania was actively presiding over the dependency case of Mother and Father's older child, M.B. Therefore, Mother concludes "the significant connection basis for jurisdiction is satisfied in Pennsylvania." *Id*. at 14.

Similarly, ACCYF contends the trial court had subject matter jurisdiction over G.G.B.'s dependency case pursuant to 23 Pa.C.S. §5421(a)(2). ACCYF concedes Pennsylvania lacks "home state jurisdiction" in this case as Pennsylvania "was not [G.G.B.'s] home state by way of presence or residence." ACCYF's Supplemental Brief at 3. At the same time, ACCYF notes, West Virginia lacks both home state jurisdiction and significant connection jurisdiction as "[G.G.B.]'s sole contact with the forum was the

---

**(c) Physical presence and personal jurisdiction unnecessary.**--Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination.

23 Pa.C.S. §5421.

[10] In her analysis under 23 Pa.C.S. §5421, Mother follows the *Z.H.* court's guidance the "jurisdictional bases do not operate alternatively to each other, but rather, in order of priority[.]" Mother's Supplemental Brief at 12 n.3, *quoting In re Z.H.*, 859 S.E.2d at 407.

circumstance of her birth there." *Id*. at 5. Thus, ACCYF conducts a significant connection analysis between Pennsylvania and G.G.B. under Section 5421(a)(2), noting the mere fact Father was present and residing in Allegheny County at the time the case was initiated "may suffice alone as [a] jurisdictional basis[.]" *Id*. ACCYF lists more connections, however, such as M.B.'s custodianship by Allegheny County and all the ensuing court records and other documentation that case entails. ACCYF argues this case and *Z.H.* "contain similarities, but there are key distinctions between the two[.]" *Id*. at 10. It maintains that "[w]hile [G.G.B.'s] parents also travelled out of state to give birth, Allegheny County assumed jurisdiction over the matter." *Id.* In sum, ACCYF concludes Allegheny County had jurisdiction over this matter.

G.G.B. relies on *Z.H.* for the argument "West Virginia does not have subject matter jurisdiction for a dependency case for a child whose sole connection to the state is her presence in a West Virginia hospital incident to birth." G.G.B.'s Supplemental Brief at 5. Thus, according to G.G.B., significant connections satisfying Section 5421(a)(2) exist in Pennsylvania "where [G.G.B.'s] parents both resided and where substantial evidence was available about [G.G.B.'s] care and protection." *Id*. at 6.[11]

"The assessment of 'whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs.'" *Domus*, 252 A.3d at 636, *quoting Assouline v. Reynolds*, 219 A.3d 1131, 1137 (Pa. 2019). "The pertinent consideration is whether the court could 'enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case.'" *Id*., *quoting County of Allegheny v. WCAB (Parker)*, 177 A.3d 864, 872 n.10 (Pa. 2018). Thus, subject matter jurisdiction is distinct from a court's power to act in a specific matter. "Jurisdiction and power are not

---

[11] Father did not file a supplemental brief.

interchangeable although judges and lawyers often confuse them[.]" *Id.*, *quoting Riedel v. Human Relations Comm'n*, 739 A.2d 121, 124 (Pa. 1999). "Claims relating to a tribunal's power are, unlike claims of subject matter jurisdiction, waivable." *In re Melograne*, 812 A.2d 1164, 1167 (Pa. 2002).

Similarly, subject matter jurisdiction is distinguishable from personal jurisdiction. Personal jurisdiction concerns "[a] court's power to bring a person into its adjudicative process[.]" *Personal Jurisdiction*, Black's Law Dictionary (12th ed. 2024). We have explained:

> [T]he underpinnings of personal jurisdiction are well established. The Due Process Clause of the Fourteenth Amendment imposes limits on a state court's jurisdiction over non-residents because a state court's assertion of jurisdiction exposes defendants to the State's coercive power. Restrictions on jurisdiction, however, are not only to protect defendants from being forced to litigate in distant courts but also are a consequence of the territorial limitations on the power of the respective States under our federalist system.

*Hammons v. Ethicon, Inc.*, 240 A.3d 537, 554 (Pa. 2020) (quotations and citations omitted) (cleaned up). As with a challenge to a trial court's power or authority to act, the issue of personal jurisdiction, in contrast to a claim disputing subject matter jurisdiction, is also waivable. *See Wagner v. Wagner*, 768 A.2d 1112, 1119 (Pa. 2001) ("A party may insist that the right be observed or he may waive it.").

Subject matter jurisdiction "is conferred by the Commonwealth's Constitution and laws." *Heath v. W.C.A.B. (Pa. Bd. of Probation and Parole)*, 860 A.2d 25, 29 (Pa. 2004). As a general matter, our state constitution grants the Courts of Common Pleas "unlimited original jurisdiction in all cases except as may otherwise be provided by law." PA. CONST. art. V, §5(b). This precept has been codified in the Judicial Code, which reads:

> **(a) General rule.--**Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and

proceedings heretofore cognizable by law or usage in the courts of common pleas.

42 Pa.C.S. §931(a).

Hence, the trial court here possessed subject matter jurisdiction unless otherwise provided by law. There is nothing in our statutes or rules contravening the trial court's subject matter jurisdiction in this instance. In fact, the Juvenile Act, which governs dependency proceedings, *see* 42 Pa.C.S. §6303(a)(1) (Juvenile Act applies to "[p]roceedings in which a child is alleged to be delinquent or dependent"), confirms subject matter jurisdiction properly vested in the trial court. The Juvenile Act defines the term "[c]ourt" to mean "[t]he court of common pleas." 42 Pa.C.S. §6302; *see also In Interest of J.R.W.*, 631 A.2d 1019, 1022 (Pa. Super. 1993) (Juvenile Act establishes "jurisdiction" of courts of common pleas to "make findings of dependency"). Moreover, it provides that a proceeding under the Act "may be commenced . . . by the filing of a petition as provided" therein. 42 Pa.C.S. §6321(a)(3). Presently, ACCYF commenced the case by filing a petition for Emergency Custody of G.G.B. *See* Application for Emergency Custody, 8/10/23, at 1-6. The Juvenile Act permits protective custody orders and thus provides for such filings. *See* 42 Pa.C.S. §6324(1). Our state constitution and laws plainly conferred subject matter jurisdiction over G.G.B.'s case to the trial court.

The fact G.G.B. was born and remained in the NICU in West Virginia at the commencement of the case did not vitiate the trial court's subject matter jurisdiction. Again, subject matter jurisdiction "relates solely to the **competency** of the particular court or administrative body to determine controversies of the **general class** to which the case then presented for its consideration belongs." *Domus*, 252 A.3d at 636 (emphasis added), *quoting Riedel*, 739 A.2d at 124. G.G.B.'s presence in West Virginia did not render the trial court incompetent to determine controversies of the general class to which this case belongs: dependency proceedings. While G.G.B.'s out-of-state status may have

implicated the distinct issues of whether the trial court had the power to act in the case and enjoyed personal jurisdiction over G.G.B., it did not imperil the court's subject matter jurisdiction. Deficiencies of power or authority do not deprive a court or administrative body of subject matter jurisdiction. *See, e.g.*, *Witney v. City of Lebanon*, 85 A.2d 106, 108 (Pa. 1952) ("[E]ven though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not only or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation."); *Del. River Port Auth. v. Pa. Pub. Util. Comm'n*, 182 A.2d 682, 686 (Pa. 1962) (although Pennsylvania Public Utility Commission lacked power to allocate costs, it did not lack subject matter jurisdiction; "[n]o other body entertains jurisdiction over this subject matter"); *In re Melograne*, 812 A.2d at 1167 ("It is beyond cavil that the Court of Judicial Discipline has jurisdiction over the general subject matter presented here, namely, determining whether an individual engaged in judicial misconduct. In fact, that is the tribunal's constitutional *raison d'etre*. The question Appellant raises — whether that body may discipline a judicial officer following his resignation from office — challenges the tribunal's power.").[12] In sum, subject matter jurisdiction was proper in the trial court.

### B. Venue

Having determined the trial court had subject matter jurisdiction to hear this case, we turn to the merits of the venue question on which we granted allowance of appeal. Like the question of subject matter jurisdiction, whether venue was proper in the

---

[12] Mother did not raise the separate, waivable issues of the trial court's power to act or personal jurisdiction over G.G.B. on appeal to the Superior Court or this Court. *See Interest of G.G.B.*, 2024 WL 4285756, at *1 n.1. Consequently, these unraised issues are waived. *See In re Melograne*, 812 A.2d at 1167 ("[I]f Appellant's claim is in actuality a challenge to the Court of Judicial Discipline's power, it has been waived as he failed to preserve it below.").

Allegheny County Court of Common Pleas is a question of law for which the standard of review is *de novo* and the scope of review is plenary. *See Domus*, 252 A.3d at 634. Mother requests this Court find "when a child is born in a county where neither parent resides, initial venue in a dependency matter should be determined by [the] residence of the parents." Mother's Brief at 36. In a case such as G.G.B.'s, where the child's parents reside in two different counties, Mother argues any challenge to venue "should be analyzed analogous[ly] to applicable provisions of the UCCJEA including Pa.R.C.P. 1915.2 Venue[,] and 23 Pa.C.S. §5427 Inconvenient Forum." *Id*. The corresponding evidentiary standard, according to Mother, should be a preponderance of the evidence.

Mother begins by explaining the Juvenile Act and the Pennsylvania Rules of Juvenile Court Procedure provide that "a dependency proceeding may be commenced in a county in which the child resides or in a county where the child is present when the action is commenced." *Id*. at 19. Because "direct application" of this language would lead to the "absurd conclusion that venue for [G.G.B.'s] dependency proceeding would only be proper in the out-of-state county where she was born[,]" Mother argues statutory interpretation is necessary to define the term "resides." *Id*. at 17, 19.

Explaining the first step in statutory interpretation is to ascertain the General Assembly's intent by referring to the plain language of the statute, Mother notes the Juvenile Act does not provide a definition of the term "residence." *Id*. at 20. Mother notes this Court has previously observed a distinction between the terms "residence," "habitation," and "domicile." *Id*. at 21, quoting *In re Lesker*, 105 A.2d 376 (Pa. 1954). Though "no Pennsylvania court has squarely considered the definition of residence for a newborn[,]" Mother finds guidance in the *Lesker* Court's recognition that "[i]t seems impossible to restrict the terms habitation, residence and domicile to airtight, waterproof compartments. Their meanings seem bound to escape their lexicographical boundaries

and mingle with the others[.]" *Id.* at 21 & n.3, *quoting Lesker*, 105 A.2d at 380. In light of the "inherent slipperiness" of the term residence, Mother contends that "[w]hen the facts of a case are such that the subject child has never been present in or resided in a county in Pennsylvania, venue must be determined based on the residence of the child's parents[.]" *Id*. at 21.

Mother insists this approach "tracks with logic and precedent." *Id*. at 23, *quoting In re G.G.B.*, 2024 WL 4285756, at *5 (Kunselman, J., concurring). She endorses Judge Kunselman's view that analyzing venue based on the residence of the parents is consistent with *Petition of Wagner*, 112 A.2d 352 (Pa. 1955) (*per curiam*). *See id.* In *Petition of Wagner*, this Court adopted the opinion of an Orphan's Court judge providing:

> The domicile of an infant is established by the acts and intention of the one who is entitled to the custody and control thereof. This doctrine means no more ordinarily than that the residence of the infant is that of its father, mother, or other natural guardian.

112 A.2d at 354-55. Mother notes as well that the North Carolina Court of Appeals, in "a factually similar case," ruled "a newborn still physically in residence in the hospital may properly be determined to 'live' in the home of his or her parents." Mother's Brief at 23, *quoting In re A.B.*, 635 S.E.2d 11, 16 (N.C. Ct. App. 2006).

Having argued a newborn child's residence should be defined by their parents' residences, Mother turns to the question of how to determine venue when the parents reside in different counties. To resolve this issue, Mother argues the "venue analysis should mirror that of interstate and intrastate child custody matters under the [UCCJEA]." *Id*. at 25. "Specifically," she continues, "an inconvenient forum analysis must be undertaken to determine whether the county of mother's residence or the county of father's residence has the more substantial connection considering factors . . . under 23

Pa.C.S. §5427."[13]  *Id*.  Mother states those factors were created to determine the most appropriate forum to make a child custody determination.  And, when considering these factors, Mother asserts the proper legal standard for a court making a venue determination is preponderance of the evidence as "venue is a procedural question, not a substantive element of dependency[.]"  *Id*. at 30.

Mother warns courts should be wary of "look[ing] beyond the statutory language to opine on where a child's 'best interest can be best served' before parental unfitness has been established[.]"  *Id*. at 33-34.  In Mother's view, such approaches may infringe upon

_____

[13] Section 5427 pertinently provides:

> **(b) Factors.--**Before determining whether it is an inconvenient forum, a court of this Commonwealth shall consider whether it is appropriate for a court of another state to exercise jurisdiction.  For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
>
> > (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
> >
> > (2) the length of time the child has resided outside this Commonwealth;
> >
> > (3) the distance between the court in this Commonwealth and the court in the state that would assume jurisdiction;
> >
> > (4) the relative financial circumstances of the parties;
> >
> > (5) any agreement of the parties as to which state should assume jurisdiction;
> >
> > (6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
> >
> > (7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
> >
> > (8) the familiarity of the court of each state with the facts and issues in the pending litigation.

23 Pa.C.S. §5427(b).

a parent's fundamental liberty interest in the parent-child relationship, considering venue is established at the commencement of a dependency proceeding when parents' rights are "intact and unencumbered." *Id*. at 32, *quoting In re G.G.B.*, 2024 WL 4285756, at *5 (Kunselman, J., concurring). "Accordingly," Mother explains, "courts may not presume that the interests of the child and parent diverge absent a finding of parental unfitness." *Id*. at 33.

Emphasizing important consequences emerge when courts determine venue in a dependency proceeding, Mother urges this Court "to direct rulemaking by the Juvenile Court Procedural Rules Committee to address the proper procedures to be followed when a dependency case involves parents who are residen[ts] of Pennsylvania and who give birth to children outside Pennsylvania with the intention to return to their homes[.]" *Id*. at 34.

ACCYF maintains virtually the same position as Mother. Noting the Juvenile Act as written "do[es] not fully account for the residence of a child born in a county where neither parent resides[,]" ACCYF recognizes the Superior Court has previously defined "residence" as follows: "[p]ersonal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently." ACCYF's Brief at 11-12, *quoting Interest of J.S.M.*, 514 A.2d 899, 900 (Pa. Super. 1986). Moreover, ACCYF notes the Superior Court has previously distinguished the terms "domicile" and "residence[,]" stating "a person may have two places of residence . . . but only one domicile." *Id*. at 11-12 (emphasis omitted), *quoting Interest of J.S.M.*, 514 A.2d at 900.

Because these definitions do not account for G.G.B.'s situation, however, ACCYF relies on statutory interpretation to ascertain the intent of the General Assembly. ACCYF

does so by considering the consequences of the various interpretations at hand. In this case, according to ACCYF, the lead opinion below would mean Pennsylvania cannot be an appropriate venue for a dependency matter concerning a child born out-of-state to Pennsylvania residents. Such an outcome, ACCYF argues, is "incongruent with the intent of the General Assembly, which . . . includes 'preserv[ing] the unity of the family whenever possible.'" *Id*. at 14-15, *quoting* 42 Pa.C.S. §6301(b). Conversely, ACCYF explains that basing a newborn's residence upon the residence of their parents "is a logical and common-sense interpretation" that aligns with the General Assembly's intent in passing the Juvenile Act. *Id*. at 15.

In addition to *Petition of Wagner*, *J.S.M*., and *A.B*., ACCYF also cites the Superior Court's opinion in *In re G.B*. for the assertion an infant lacks the "mental capacity to form an 'intent' or 'purpose' to reside in any particular place. Therefore, a determination of which county should retain legal custody . . . depend[s] on factors other than mere 'residence[.]'" *Id*. at 16, *quoting In re G.B*., 530 A.2d 496, 499 (Pa. Super. 1987). Looking to precedent outside the Commonwealth, ACCYF notes a Colorado intermediate appellate court found "venue was proper in the mother's county of residence despite the newborn child's birth in a different county." *Id*., *citing In Interest of C.N*., 431 P.3d 1219, 1221, 1223 (Colo. App. 2018). ACCYF concludes this caselaw demonstrates Allegheny County was a proper venue for G.G.B.'s dependency proceedings.

Turning to the facts of this case, ACCYF agrees with Mother that where a newborn's parents reside in two different counties, initial venue should be determined using the UCCJEA. ACCYF argues this Court has indicated the UCCJEA applies to juvenile courts. *See id*. at 19, *citing Velasquez*, 321 A.3d at 898 (explaining "a common pleas court with custody jurisdiction under the UCCJEA is a 'juvenile court' for purposes of making predicate [Special Immigrant Juvenile status] determinations"). Accordingly,

ACCYF argues Section 5421(a)(2) confers jurisdiction over a dependency matter where no other state has home state jurisdiction over the child. And, when deciding between two counties to determine venue, ACCYF believes courts should consider the Section 5427 inconvenient forum factors. Like Mother, ACCYF contends these determinations shall be proven by a preponderance of the evidence standard, as venue is a "merely procedural" matter. *Id*. at 25. As applied in this case, ACCYF concludes the factors under Section 5427 demonstrate initial venue was proper in Allegheny County.

G.G.B.'s arguments echo those of Mother and ACCYF. Namely, G.G.B. "urges this Court to establish that a newborn who has not yet left the hospital is deemed to reside with both parents for purposes of venue analysis in a dependency proceeding." G.G.B.'s Brief at 7. This approach, in G.G.B.'s view, would effectuate the Juvenile Act's stated purpose of "provid[ing] for the care, protection, safety and wholesome mental and physical development of children[.]" *Id*. G.G.B. also argues that, where a newborn's parents reside in different counties, the trial court should consider various factors to determine venue using the preponderance of evidence standard.

However, unlike Mother and ACCYF, G.G.B. does not defer to the enumerated factors under Section 5427. Rather, she believes a child's best interests should be considered, and proffers the following factors as a few examples for such an analysis:

> [W]hether there is an open dependency proceeding for a sibling, and if so, whether the issues that led to the pending case are similar to those in the case for the sibling; the availability of services to address issues that led to the dependency proceeding; whether either of the county child welfare agencies is already providing services to the family; whether the other county agency is willing to provide services to the family; the convenience of the parties; and judicial economy.

*Id*. at 10-11. G.G.B. disagrees with Mother's argument the best interests of the child "do not diverge from the interests of her parents at the commencement of a dependency proceeding[.]" *Id*. at 13. In support, G.G.B. explains each child is appointed a guardian

*ad litem* from the outset of a dependency case, reflecting the fact a child's best interests may well diverge from those of their parents. G.G.B. asserts this approach reflects that each case is unique, and trial courts should be able to review all relevant circumstances to make a venue determination. Applying these factors to this case, G.G.B. concludes Allegheny County was a proper venue considering ACCYF's previous involvement with G.G.B.'s family, as well as Fayette County's declination of jurisdiction.

Lastly, Father concurs with Mother, ACCYF, and G.G.B. on their position that the term "residence" "encompasses the residence of the child's parents when the child has never had the opportunity to establish a residence of their own." Father's Brief at 10 (unpaginated). Father further agrees that when a child's parents reside in two different counties, "courts should engage in a venue analysis like that contained in the [UCCJEA]." *Id*. Like Mother and ACCYF, but unlike G.G.B., Father believes "an inconvenient forum analysis must be undertaken to determine which parent's county of residence has the more substantial connection to the matter." *Id*. Father reiterates that to follow the Superior Court's holding below would produce the absurd result of "a child with no residence at all." *Id*. at 14.

Like the power of a court to act and personal jurisdiction, venue is "distinct" from subject matter jurisdiction. *Commonwealth v. Bethea*, 828 A.2d 1066, 1074 (Pa. 2003). Whereas "[s]ubject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented[,] . . . [v]enue relates to the right of a party to have the controversy brought and heard in a particular judicial district." *Id.* Venue in dependency cases is prescribed by 42 Pa.C.S. §6321 and Pa.R.J.C.P. 1300. "The object of all statutory interpretation is to ascertain and effectuate the intent of the General Assembly." *Commonwealth v. Griffith*, 32 A.3d 1231, 1235 (Pa. 2011). "In general, the best indication of legislative intent is the plain text of the statute." *Id.* "When the words

of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. §1921(b). "In the construction of the Pennsylvania Rules of Juvenile Court Procedure, the principles set forth in Pa.R.J.A. 104 to 115 shall be observed." Pa.R.J.C.P. 101(c). Pursuant to the Pennsylvania Rules of Judicial Administration, "[t]he object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court." Pa.R.J.A. 108(a). "The plain language of a rule is the best indicator of such intent." *Commonwealth v. Lopez*, 280 A.3d 887, 897 (Pa. 2022) (brackets and citation omitted). "When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Pa.R.J.A. 108(b).

Again, Section 6321 pertinently provides that a dependency proceeding "may be commenced . . . [i]n the county in which the child resides[, or] in the county in which the child is present when it is commenced." 42 Pa.C.S. §6321(b)(1), (3). Rule 1300 likewise states in relevant part: "[a] dependency proceeding shall be commenced in: (1) the county in which the child is present; or (2) the child's county of residence." Pa.R.J.C.P. 1300(A). Thus, these provisions clearly and unambiguously provide that venue is proper in a dependency proceeding only in the county in which the child is present or resides. The presence and residency of the child are the sole focuses of the venue inquiry. The residency of the parents plays no role in the analysis. There is no language in these provisions stating or implying that a child may be deemed to reside where their parents do. *Compare* 24 P.S. §13-1302(a) ("A child shall be considered a resident of the school district in which his parents or the guardian of his person resides."). Our binding rules of construction oblige us to read the statute and rule as written, and not to read language into these provisions that is just not there.

In G.G.B.'s case, she was born in Morgantown, West Virginia, and remained there, in the NICU of the West Virginia University Children's Hospital, at the time ACCYF commenced the dependency proceeding in Allegheny County, Pennsylvania. Obviously, G.G.B. was not present in Allegheny County at the commencement of the case. Nor did she reside in Allegheny County at the time. In common parlance, "reside" means "to dwell permanently or for a considerable time." *Reside*, Dictionary.com, https://www.dictionary.com/browse/reside (last visited Mar. 22, 2026). G.G.B. had never even been to Allegheny County, or anywhere else in Pennsylvania for that matter, when ACCYF began the case, much less had she dwelled there permanently or for a substantial amount of time. Hence, under the plain text of Section 6321 and Rule 1300, venue was lacking in Allegheny County.[14]

In conclusion, while the Court of Common Pleas of Allegheny County possessed subject matter jurisdiction over G.G.B's dependency proceeding, it lacked venue because the child did not reside, and was not present, in the county. Therefore, we vacate the decision of the Superior Court and remand to the trial court for further proceedings

---

[14] It bears emphasis that while venue was improper in Allegheny County, or elsewhere in Pennsylvania, G.G.B.'s welfare was not beyond the reach of the law. At a minimum, the appropriate court in West Virginia had temporary emergency jurisdiction to protect G.G.B. from mistreatment or abuse. *See* W. Va. Code §48-20-204(a) ("A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."). Indeed, the same goes for all children of this Commonwealth, including — but not limited to — newborn infants remaining in the hospital. Our plain-language construction of Section 6321 and Rule 1300 does not "allow parents" or circumstances "to circumvent the involvement" of child protective services. Concurring and Dissenting Op. (CDO) at 4. Again, these provisions specify venue is proper in dependency proceedings in the county in which the child resides **or** in the county in which the child is present. *See* 42 Pa.C.S. §6321(b)(1), (3); Pa.R.J.C.P. 1300(A); *see also* CDO at 7 ("Rule 1300(A)(1) allows for venue where the child is physically present."). The at-risk child will always be present somewhere and thus there will always be a location in which venue is proper and proceedings safeguarding the child's wellbeing may commence.

consistent with this opinion. In recognition of the fact G.G.B. has remained in kinship care throughout these proceedings, however, we order the court maintain the status quo of G.G.B.'s current placement pending the issuance of any new order.

Additionally, while we are presently bound by the existing language of Rule 1300, it is the prerogative of this Court to amend the rule going forward. *See Bethea*, 828 A.2d at 1074 ("Venue is predominately a procedural matter, generally prescribed by rules of this Court."), *citing McGinley v. Scott*, 164 A.2d 424, 428 (Pa. 1960) ("[V]enue, unlike jurisdiction, being a matter of procedure, and not substance, is within the competency of the Procedural Rule's prescription.") and 42 Pa.C.S. §931(c) ("the venue of a court of common pleas concerning matters over which jurisdiction is conferred by this section shall be as prescribed by general rule"); *accord* PA. CONST. art. V, §10(c) ("The Supreme Court shall have the power to prescribe general rules governing . . . procedure . . . if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court[.]"). Generally, the preferred course for amending procedural rules is through the rules committee process rather than through Court decision. *See Commonwealth v. Pownall*, 278 A.3d 885, 907 n.20 (Pa. 2022); *Commonwealth v. Pressley*, 887 A.2d 220, 224 n.8 (Pa. 2005). Accordingly, we refer this matter to the Juvenile Court Procedural Rules Committee to consider potential revisions to Rule 1300 in light of the circumstances of this case. *See, e.g.*, Concurring Op. at 2 (advocating an intent-based residency test for non-present, hospitalized newborn infants that requires "proof of a parent or caregiver's residence and accompanying testimony regarding the intended residence for the child following discharge from the hospital"); CDO at 6 (advocating a rule that automatically "impute[s] the parents' residence to the newborn infant").

The order of the Superior Court is vacated and the matter is remanded to the trial court for proceedings consistent with this opinion.  Jurisdiction relinquished.

Chief Justice Todd and Justices Donohue, Wecht and McCaffery join the opinion.

Justice Brobson files a concurring opinion.

Justice Mundy files a concurring and dissenting opinion.